Oi'iwion of the Court.
These were actions of detinue, brought by Lynn Banks, as administrator of Rachel Banks, deceased, against Marksberry and others, severally, to recover sundry slaves.. Each of the defendants pleaded non detinefi, upon which issue was joined, an ¿'the several causes were, hy the consent of the parties,"^Eried together. On the trial, the plaintiffread in evidence a deed from Samuel Marksberry, bearing date the 1st of November 1773, which, on the same day, was acknowledged by him and admitted to record in the county court of Amherst county in Virginia, where he then resided. The deed is in the following words:
“ To all men to whom these presents shall come, I, Samuel Marksberry, send greeting: Know ye, that I, the said Samuel Marksberry, of the parish and county of Amherst, for and in consideration of the love and good will I have and bear to my three children, namely, John, Samuel and Rachel Marksberry, have given and granted, and by these presents do freely give and grant unto the said John Marksberry, my son, of the said county, his heirs, executors and administrators, all my lands, stocks of horses, cows and hogs, and all my household stuff; and to Samuel Marksberry, my younger son, I do likewise give my negro wench, Pen; and her in-, crease from this tíme, I do give to my daughter, Rachel Marksberry; of which, by these presents, I have delivered to them, the said John, Samuel and Rachel Marks-berry, the above mentioned things, to be enjoyed by the said three children, from this day forward; that I and my beloved wife, Isbell, shall enjoy them during opr lives. As witness whereof, I have hereunto set my. *277 band and seal, the first day of November, one thousand seven hundred ánd seventy-three. '
* Samuel* Marksberry, [Seal.]”
The plaintiff tfáft ptoved that Samuel Marksberry Removed from Amherst county, and sattledafl what is now Garrard county, shortly before the. separation of this state from Virginia; that his daughter, Rachel, in the deed mentioned, intermarried with William Banks, in 1790, and after having had several children by him, of whom the plaintiff was one, died in 1798; that some years thereafter, her father, Samuel Marksberry, and his wife, died; that the plaintiff, in 1821, obtained ters of administration of the estate of Rachel Banks, her husband, William Banks, relinquishing his right to administer; that the slaves in controversy were the descendants of. Pen, in the deed mentioned, and that they were, at the commencement of these suits, in the possession of thesdefendants.
The defendants, on their part, produced testimony conducing to prove that Samuel Marksberry made the Seed in question to secure the property from being taken by his creditors; that he was, at the time, insane; that he continued in possession of the property conveyed by the deed,' until shortly before his death, when he made a distribution of the slaves Amongst his children, including [lie plaintiff; and that William Banks, his father, was present and acquiesced in the division; and that some of the slaves are lield by the defendants as purchasers.
The plaintiff then introduced evidence tending to repel, or explaining away the facts attempted to be established by the defendants; and the evidence being dosed on both sides, the plaintiff moved the court to instruct the jury on several points, which -was refused; and the court, at the instance of the defendants, besides giving several specific instructions, directed the jury, that from the evidence of the plaintiff and the law of the-case, the plaintiff had ho right to recover.
To the refusal of The court to instruct the jury as aslced by the plaintiff, and to the instructions given at the instance of the defendants, the plaintiff:excepted; and a verdict and judgment being rendered against-him, he has appealed to this court.
The errors assigned; question the correctness of the decision of the circuit, court, both in refusing tq instruct *278 the jury as asked by the plaintiff, and in giving the in* struefions asked by the defendants.
A parol gift of slaves, ■without de~ lively, is void; but a gift by deed, on a good consideration, is valid without delivery.
The relation of father and cliild, is a suf-Jlcient consideration to tender a gift of slaves by deed from the former to the latter, valid.
If the reservation in a deed is incompatible with the gift, it will be void and the gift vali$>
It is manifestly material only to examine the general instruction, that from the evidence' the plaintiff had no right to recover; for if that be erroneous, the judgment, on that ground, must be reversed; and if it be correct, it is obvious that the plaintiff can have no just cause to complain.
For the defendants, it is contended — 1st, That the deed from Samuel Marksberry passed no interest in the «laves in controversy, to his daughter, Rachel; and 2dly, that if it did, the interest vested m William Banks, the husband of Rachel, apd did not go to her administrator; and, of course, the right of action belonged to the former, and not to the latter..
1. In support of the first of these positions, various grounds were assumed in argument. It was urged, in the first place, that the gift of the slaves was void, there having been no delivery of them to the donees. There is no doubt, that to the completion of a parol gift, thedelivery of the thing is essential; but, we apprehend; this principle does not apply to a gift by deed, if the deed be founded upon a good consideration. The relation of father and child, which subsisted in this case; is a consideration of that sort. Such a consideration, when coupled with a deed, was, at common law, held sufficient to create a trust in real estate, which would be decreed in a court of equity; and under the statute of uses, is sufficient to transfer the use into possession, and thus complete the legal title in the cestui que use; and much more ought such a consideration to be deemed sufficient to support a deed alienating the personal, estate. This ground is, therefore, untenable-2. Another ground assumed in support of the first position, is, that the reservation of the slaves to the do-, nor and his wife, is incompatible with the gift, and that the operation of the deed was thereby hindered and defeated. If either the reservation or the gift must be void, because of their inconsistency, it is obviously much more consonant to general principles, that the former *> should be so, than the.latter. We cannot, however, admit that they are inconsistent with each other, or that either is void. It is true, that taking them both together, and giving due effect to each, according to the plain intention, of the donor, the gift must be consider *279 cd as taking effect after tbc death of the áonor and his wife; but we do not suppose that it is on that account void. A graht of a freehold estate in land, to take effect in future, was, no doubt, at common law, void; but this was upon' principles peculiar to that species of property, and which were never applied to personal estate ; and though slaves are by statute made real estate, yet by the same statute they are subjected to the rules which, in this respect, regulate personal estate. Nor, considering slaves in the light of personal estate, can we admit that the limitation of the gift, to take effect after the death of the donor and his wife, is too remote to be valid. Undoubtedly, there should be a period beyond which no man should be allowed to direct how his estate, whether real or personal, should devolve. Perpetuities are not, and ought not to be tolerated; but, at the same time, the power of the owner to direct the course of the devolutions of bis estate, ought not to he restrained to such narrow limits, as to prevent the reasonable arrangements of individuals.
A gift of slaves by a father to his children, to take effect after the death, of himself and wife, and not until then, is valid,
Since the abolition of estates tail, the rules as to limitation of estates in personal and. real property, are the samo..
The rule upon this subject is different in different countries; but according to the common law of England, which we- have adopted, it is well settled, that a limitation which is to take effect within any given number of lives in being, and twenty-one .years and the usual period of gestation afterwards, is valid. Such a limitation of personal estate, was, indeed, by the ancient common law, held to be void. In fact, in the early ages of the common law, personal estate was but little regarded, and thought to be subject to no modifications or limitations whatever. A gift or grant of a persona] thing, for a day or even an hour, was supposed to be equivalent to a gift or grant of it forever. Shep. Touch. 116.
3. But in succeeding ages, when commerce and civilization had given additional importance to personal estate, new rules were invented, to make it answer better the exigencies of society, and it was at length placed, with respect to the limitations of which it was susceptible, more upon an equality with real estate. In England, the only difference is, that real estate may be entailed, and personal estate cannot; and in this country, where estates tail are abolished, the rule is exactly the -«feme, both with respect to real and personal estate. *280 We arc, therefore, of opinion that this ground is ata-untenable.
The owner of a female slave may, by deed, give all flu; children which she shall thereafter have, to one of his children, and the female herself to another. .
4. Another ground urged in support of the position*, that no interest in the slaves in question passed by the deed, is, that as it was the future increase of the slave, Pen, that was attempted to be given by the donor, he had nothing thereof in him at the time; and that a man cannot make a good grant or gift, unless the thing be in him at the time of the grant, according to the maxim, “ nemo dat quod non babelW ithout controverting the correctness of this maxim, or of the principle upon which it is founded, we have no hesitation in saying, that it is inapplicable to the present case. Pic wlio is the absolute owner of a thing, owns all its faculties for profits or increase, and he may, no doubt, grant the profits or increase, as well as the thing itself. Thus it is every day’s practice, to grant the future rents or profits of real estate; and it is held, that a man may grant the wool of a flock of sheep, for years. Noy’s Max. 83. The interest which the donor’s daughter, Rachel, took in the increase of Pen, must, indeed, from its nature, have been contingent at the time of the gift, but as the children of Pen were thereafter bom, they would, by operation of the deed, vest in the donee, and her title thus become complete. This ground is, there - fore, as untenable as cither of the former; and, upon the whole, wre are satisfied that the first position relied on by the defendants’ counsel cannot, be sustained.
It remains to examine the second position relied on by them, “ that the right which the donor’s daughter acquired in the slaves in question, vested in her hus band, William Banks, and did not go to her administra ior.
The act of assembly provides, that “ where any slave or slaves have been or shall be conveyed or bequeathed, or have or shall descend to any feme covert, the absolute right, property and interest of such slav e or slaves is hereby vested, and shall accrue to, and be vested in the husband of such feme covert; and where any feme sole is or shall be possessed of any slave or slaves, as of her own proper slave or slaves, the same shall accrue and be absolutely vested in the husband of such feme, when she shall marry.” 2 Dig. L. K. 115G.
As the legislature had previously declared slaves to real estate, it was, no doubt, their intention, by this *281 provision, to make them, as to the right of the husband in those of the wife, an exception from the general rule, and in that respect to place them, as they had done in several others, ippon the footing of personal estate. The counsel for both parties admitted that to be the effect of the provision,; and, in fact, the^Iame provision has been so construed by the court "of appeals of Virginia.
tVhere.a chose in aé-° tioji has accrued to the wife before marriage, she must join with her husband in a suit for the recovery of it; but where it accrues during coverture, he may sue a"lone, or join his wife, at his election
5. The.qqesjion, then, occurs, whether the slaves in question, cqiiiiciered merely as personal estate, were vested in thé husband, William Banks? By the operation of law, all the personal estate in the possession of the wife, in her own right, at the time of her marriage, is thereby absolutely vested in the husband; but with respect to choses in actibn, as debts d#re by bond, simple contract and -the like, the la‘w is different. The general rule is, that these do ridtvest in the husband, until he receives them, or, recovers them at law; and if he fails to do .sp, they survive to the wife, in case of his death, or go to her administrator, ifshc dieheforehim. This rule must, however, Be understood with some restrictions. It evidently applies, in its utmost latitude, only to the choses in action to which the wife was entitled at the time of her marriage, and not to those which ■accrue to her during coverture. Between the interest which the husband acquires by the marriage, in tfie former, and thht ivliich' vests in him in the latter, therfe is a manifest distinction' taken in all the books which treat of the subject; for they universally agree, that in .■drfaction to recover a chose iishetion which had accrued to the wife before marriage, she must join with the husband, and he cannot s,ne alone; but in an action-to recover a chose in action which accrues -to the wife during coverture, he may sue alone,, of may join his wife, at his election. 1 Stra. 230, 2 S.tra. 720, 1 Com. Dig. title Baron and Feme, letter x, 1 Chit. Plead. 18-19, Toller's Ex’ns. 220.
This difference in the remedy is clearly founded upon a difference in the right which the husband acquires in the wife’s choses in action which accrue to her before marriage, and those which accrue during coverture; for it is a general rule, that the remedy follows the right of property j^apd it is accordingly laid down, that such chattels as'are given to the wife after marriage, shall belong to the husband, and he *282 sliitll be entitled to them, although they had not come to his possession at the time of her death. Thus it has been held, that if a legacy be deft to the .wife, to be paid twelve months after the testator^; death, and the wife die before jjfaat period, the husband is entitled to it; for an immediate interest was vested in him, and subject to his releáse, before the. time of payment. Com. Dig. Baron and Feme, (E 3,) Toller’s Law of Ex’ns. 224.
Slaves, while "rti'wpTvint fer life of them, are not *Sfac-reversioner in fee; because the possession of the tenant for life, is not adrer?e,to, but eOMStrnt frith,Ba^ille.
*282 In some cases, the right to a chose in ■ action accruing to the wife during coverture, will, no doubt, survive to her, in case of the death of the husband; and it would seem, that to render the law consistent with itself, such choses in action ought, in alf cases, to survive to her. Butp.be that as it may, it is not material now to enquire; for the husband, in tills case, survived the wife; and it is perfectly clear, that in no case will such a chose in action go to the administrator of the wifei(j, if the husband survive her. In that event, the right to such chose in action, and with it,- the right to the remedy to recover it, survive to the husband, in all cases, without exception. '“If,” says Baron Coinyns, “ a feme covert die, and the husband survive, he shall have an action for any thing inured during coverture.’’ Com. Dig. Baron and Feme, x.
It results from these principles, that^if the slaves in question be considered as choses inaction, they would only have vested in part in William Banks, the husband of Rachel; for the children of Pen must, as we before observed,-have vested in'her as they were born; and. although there is no direct proof of the fact it is highly probable, that most of Pen’s children were born before the marriage of Banks and his wife; and upon "the hypothesis of their being choses in action, those only which were born during coverture, could have vested ■in Banks. .
6. But we cannot admit that the slaves in question -can he considered as choses in action. They were in ^le possession of the donor;- but his possession was consistent with the ti|le of Mrs. Banks, and not adverse. - There is no proof that lie ever did, prior to her max--riage, set up any claim to the slaves, incompatible with the, deed of gift; and under that, he had only a right to the use of them for life, while the absolute pi'operty in feo belonged to Mrs. Banks. She had, in fact, the. *283 generaf, and heosily a-*special p-r.ojggrly in the slaves; and it isa known-rt^e of-faw,, that the general property of a chattel, draws with ’ it the possession. ’She was notrindeed„in rafeiacÉO^Í'éhjoym'ent- pf the-.slaves;, but surely every chattel, of which me oW.|pír :'is hot in thp actual enjoyment, e»nn.of be deno^natedra chose in action. Nor is §¡*ch actual enjdyhfent of a chattel-which accrues to a^jfe bpfore "marriage, necessity,' tavesfher i nteréstíj^|ya.hi]shand. . If a chattérbeí found,-and not convef'iM^ptffe'u^éCQf the finder; br if it- be'hired or l9arroan)^.^j|j«rí?;^g^aIfed, it'does thereby bcc«&e a chóseh-ih' aclioh^'aná ;n it felong, to .a woman, who marrigs, Iter right immediately vestís iirher husband, at jfeastsg-tj^r, thktifsjie dies, it will survive'to him. jgiklfreJ^'Waf if a chattel,, which belongs to the wife b'efo&.im’á-'rBiáge, is afterwards converted by the '||i(S,er,,t^¿Íiujb'¿hd •m.dy,suc 'alone,for the ’conversion, ,bi?M may; át^^éíéction,join hi^wife. 1 Chit; Plead. 62, .jLnd'it-'iS even said, that in an actiton of déteme, to^reebyer'ine personal chattels of the wife in the posses^h o.£. the' defendant before the marriage, the 1ms* .haSt^mnst!-Sue alpbie; because the law transfers the property tó hp», $hd "the wife has no-interest. Bac. ^>1-. title "í)eünne, A. i'T3l|ik Plead. ,60.
' Whether the Ihter,-iyp,ferine, is correct, or not, in its utmost extent^^.'^^o'uésttonabíe: but supposing it to" bejiñ^n-ect,husband, in such a case, «i,fin anja,c£ion ofaetinue, as he undoubtedly may fiction of trover, sue alone, or join his-wile, at his ion, still it is sufficient to show that the husband iieofpires such an interest -in his wile’s chattel, thus situated,‘"tbitt if the wife die, the right will survive to him, go to hp administrator. The inevitable con-idfesMrii therefore, is, that the right to* the skr*-- in q^stioni-athis case survived to the husband, William Btóks; ana, of course, the plaintiff in the circuit court showed lip ngli^ fo maintain the actions. This conclu- . .sióh te' n£jy.céntrayencd b.y the Virginia cases cited in ihé,$|gum<|íit.,” Oh, the .contrary, we think it is strongly íar-fihga-^-y-them. 'From- an attentive examination of' thbsé‘¿áJes, me dear result from .them all seems tobe, that if a feme sole be entitled to slaves in remainder or reversion, and marry before the determination of the' p’articñlar estate, the right will go to’ the husband or the wife, as the one or the ether may survive. And ac *284 cording to that doqfrine,it is obviqtfs, as the husband,, in this case, survived, the right to-the slaves in question must belong to him.
The judgment must be affinned wA costs.