Chief Justice Bibb
delivered the Opinion of the Court.
Peyton had judgment against Smith for eighty dollars, and costs, and execution returned no property found. Thereupon Peyton exhibited Ids bill against Smith, and the executors of Wil-limn Crnnt, for the purpose of subjecting to his jutlg- *264 ¿lent, that part of the estate of the testator which was devised to his grand daughter, Eliza Grant, then sole, now the wife of Smith the debtor, the bill alleges the property to be in possession of the executors. The last will and testament of William Grant, deceased, is exhibited, by which these devises appear:—
Will of William Grant.
Answer of the executors.
Smith the debtor, his answer.
“After my funeral expenses and just debts are paid, my desire is that the remains of my estate be divided as follows: Item, I give and bequeath to the children of my son Daniel Grant, to-wit: Eliza Grant, Daniel Grant, jr. and all others which he may have in a lawful way, one third part of all my negroes, and other moveable property, except what may be hereafter mentioned, to them and their heirs forever.”
There is a similar devise of one third to the children of his son William, then living, and such others as he may lawfully have, and of one third to the children of Elizabeth Grant, the widow of a deceased son, subject to her use during life, or widowhood. The testator gives other legacies, and makes certain charges upon the hire of the slaves, and other directions to be observed until a division be made.
William Rogers, Robert Render, Richard Taylor and Daniel Grant, are appointed executors.
The executors answer, and say, that the personal estate is already exhaused in the payment of debts, and that there are debts yet due from the estate, and some claims upon the estate in litigation, that they cannot make distribution until those suits are decided, nor can they make the distribution until the death of Daniel Grant, because all his children are entitled, and they cannot know until his death, how many shares will be; that they cannot be compelled to make distribution until that event, and they deny the propriety of the decree asked by the complainant.
The answer of Smith admits the debt, but denies the propriety of the decree asked by the bill.
jjecree ofthc circuit court,
Ecluit;y ought the salegan uncertain in-terestinan ñumbe^of unknown slaves: — Sen aflie’
The decree is “that the interest which the said Thomas Smith has in, and to the said nogroes devised to Eliza Smith his wife and others, by the said William Grant, deceased, be subject to the judgment and costs in the bill mentioned.” — “that the interest which said Smith has in, and to, the said negroes be sold, or so much thereof as will be suffir-cient to discharge and satisfy the same. It is ordered that the purchaser of the same shall give boi^l with good security, to be filed in Ibis court, conditioned to have the negroes forthcoming and subject to any lawful demand, which shall hereafter come against the executors of the said William Grant, deceased.” A commissioner is appointed to carry the decree into effect; he is “authorized to expose the interest which the said Smith has in, anti to the said negroes, according to the words of the will, and by his marriage with the said Eliza Grant,” and “to execute a writing to the purchaser under his hand and seal, testifying the same according to the order of this decree,” To*take the bond to the executors, conditioned as aforesaid, and a bond for the money to be raised by the sale at three months, and make report; the defendant Smith to pay the costs of the suit.
The decree and order of sale and direction to the commissioner does not propose to sell any certain number of negroes, nor any interest in a certain number of negroes, nor any certain interest. The number of negroes to be divided between the children of the three sons of the testator, does not appear in any part of the exhibits, or answers, or proofs. The number of negroes to which Eliza Grant, now wife of the debtor Smith, would be entitled, cannot be ascertained, because all the children of her father Daniel, born and to be born, are equally entitled, and her father is yet living, and no division between the children has been, or can yet be made. It would be in vain for the commissioner, or for the bidders to look into the proceedings in this case to ascertain what slaves, or what quantum of interest in slaves are to be exposed to sale. The most diligent search into the bill, answers and proceedings, and will, could not enable the com *266 missioner to answer to the bidders, if interrogated, what negroes, what number, and what degree of interest in the negroes are you to sell, and we to bid for? All is darkness and obscurity.
Contingent interest of the husband in slaves devised to the wife, not reduced to possession, not a proper subject of sale, by the chancellor’s decree for payment of Ins debts.
■interest of the husband in the property.
56qrfty will oaF°df'a Üle «slaini to atl -undefesd in-expose and-sell the thing terest in unknown property,but clear all in cum-hra tines. ani?
*266 There is another difficulty insuperable. Whether Smith the husband ever will be entitled to his wife’s share of the slaves devised, depends upon contingencies. The slaves were devised to the wife add her brothers and sisters, born or to be born of her father. She was then unmarried, no division can he made during the life of her father, Daniel Grant; neither has the husband as yet reduced these slaves into possession. If the wife survives the husband, he not having reduced these slaves into his possession, then they survived to the wife, according to the decisions in Ewing’s heirs vs. Handley’s exr’s. 4 Litt. 356; Pinkard vs. Smith and wife, Litt. sec. ca. 336; Banks vs. Marsberry 3 Litt. 283; Wallace vs. Taliaferro, 2 Call, 490, 2 Hen, and Munf. 381.
Whether the husband Smith will ever be entitled to his wife’s share of these slaves depends on the one or the other of these events, either that he shall survive his wife, or that he shall survive the father Daniel Grant, and obtain division and possession of the slaves in his lifetime.
Under all these insuperable difficulties the circuit judge has not attempted to compel division, he has not attempted to define or ascertain (that which was undefinable,) the individuality or even the number of the slaves which shall be sold, nor to make known to bidders what things or what interest in things the commissioner was ordered to sell, but he orders the commissioner to expose to sale the interest of the said Smith, “according to the words of the will, and by his marriage with the said Eliza Grant.”
The decree transgresses those rules by which .courts of equity ever have been, and ever should governed, in ordering a sale of property or effects of a debtor, and in advertising for bidders. A court of equity regards the rights and interests of *267 tíie creditor and also of the debtor, it aims at equal and impartial justice to both; it looks forward to the interests of bidders; and that confidence which purchasers should have in the court and its officers, and the just expectation of bidders, that they are not to be deceived and defrauded through the instrumentality of a commissioner acting under its authority. It never frames its decrees and order of sales in such sort as that sacrifice of the estate of the debtor must inevitably foll’ow; nor invites men to hazard in catching bargains, by bidding for that which is undescribed and undefined, and incapable of description, by the commissioner, to the senses or understanding of bidders. Acting on these principles, a court of equity never fails to require such notice, by advertisement, of the time, place, and things, as are reasonably calculated to produce a fair competition amongst bidders; that the creditor may be likely to get his money, and the debtor not subjected to erroneous and oppressive sacrifice of bis property.
Estate cover, ed by numer-ges*, how to" be sold. ,
objections to the sale of an undefined claim in an unknown estate by the chancellor’s order.
Acting on those principles, a court of equity will never knowingly decree the sale of mortgaged premises until all the incumbrances are brought before the court, so that the estate itself may be sold, and assure cl to the purchaser, not a law suit, nor a deception. (Ensworth vs. Lambert and Fanning, 4 John. ch. ca. 605; Smith vs. Hallock, same, 649; M’Gowan vs. Yerks, 6 John. ch. ca. 450; Fell vs. Brown, 2 Brown’s chan. ca. 276,
At the sale as directed by this decree, no fair bidding or competition can be expected, when neither the things sold nor the quantum of interest sold is defined, or capable of being defined, so as to enable any bidder to graduate the sum bid by the value of the thing he bids for, every bidder must bid in the dark, he must bid for a bird in the busb. Here the value of the property is not stated, it cannot be known, nor its value estimated, because wholly undescribed, and incapable of definition, and the hazard is to be run upon the life and death of Smith, his wife, and Daniel Grant. •, Such a sale q&nnpjt, irj the nature of man, be expected to pro- *268 ducc any fair competition, it is not addressed to tits understandings of plain men; those only skilled in the arcana of the law can understand what the advertisement of sale would mean, and no reasonable or fair price can in any probability, be the result of such a sale.
interest of the husband in visodtothfi0" wife and all the children thenT/being’ and after- ’ ■wards to be main’ing1 un-6" divided in ths hands of the ¿annot°be subjected to the payment of during the Si life of the wife’s father,
But there is an equity due to the wile, whose property is the subject of pursuit by a creditor, asking tjl8 COurt to help him to appropriate the wife’s property to pay the debt of her insolvent husband, ’This a court of equity will not do' in any case, but py securing a wife in a suitable provision for her support, as decided at last term, in Elliott c. vs. Waring, 4 Monroe, SS8. Suppose a sale made under this decree, the purchaser obtains from the com» tnissioner, a writing under hand and seal, expressive of his purchase under an advertisement and sale according to the decree; suppose Daniel Grant, the father of Eliza, dies, and the purchaser, under faith o’f this certificate of his purchase, exhibits his bill against the executors, (in whose possession the bill charges the slaves to be,) and against Smith and his wife, and the other devisees, for distribution;the claim of the wife for a suitable provision is interposed. The claim of the wife must either he decreed or refused; if the latter, then the interests of the wife, have been sacrificed and concluded, by virtue of the decree in this cause; if her claim is decreed, then the purchaser has been deceived by a secret equity lurking Under the words of the sale, which was too nicely hidden, to be seen by the bid-, ders.
What then is ordered to be sold by this decree? The question cannot be more understan.dingly an - swered, nor more distinctly presented to the inquirer, than by saying, ‘.‘the words of the will,” and Smith’s “marriage with the said Eliza Grant.” But what these words mean, what property is to be sold and bought, whether any thing or nothing, depends upon events to happeii, and upon questions hereafter to arise upon the happening of those contingencies. Such a contingency in the slaves devised to Eliza Grant and the other children of her *269 father, Daniel Grant, is not a proper subject for sale, under a decree of a court of equity, for purpose of paying the debts of the husband of Eliza; it cannot be thus reached in the lifetime of the fath-her. The court cannot compel division nor distribution, nor know, to what the husband will be entitled, or whether he will ever be entitled, so long as Daniel Grant lives, and the slaves remain out of the possession of Smith. A court of equity cannot know, what property of the wife ought to be retained, and what may be appropriated to the husband’s debts, sd long as the number of children of Daniel Grant is unknown, for so long the amount of the wife’s estate is uncertain and unknown. Under all the circumstances of this case, the interest or contingency of Smith, the husband in the estate of his wife, cannot be reached by any equitable decree, which this court can or ought to make upon the matters of this bill. Daniel Grant living, a court of equity, cannot, without violating its own vital principles of action, make a decree for the complainant.
Wife’s inters“od bTprotecté». by the chan-" andS ¡Li subject- ' ed, without securing her Ie
It ought not to sell, the words of a will, a mere echo, vox et pt'eterea nihil; it ought not to seduce men to bid for an interest unknown, in things unknown, and undescribed; it ought not to decree away the estate of thqf wife, for the debts of the husbnad, without securing a suitable support for the wife; it ought not to expose the estate to certain and inevitable sacrifice; it ought not to undermine that confidence in salesj under its orders and decrees, which is so essential to the welfare of society. A court of equity cannot, without subverting its principles, extract money from bidders, by selling lures, temptations, phantoms, couched under enig-matical words, the meaning of which, as to the things and quantum of interest, defy the powers of the court itself, to explain and make known, it ought not, by concealment of the subjects sold, and by hiding under ambiguous terms, the quantum of interest sold, drive a bargain, through the instrumentality of a commissioner, which, if so made by an individual, would be liable to be impeached for fraud and imposition.
J urisdiction and powers of the courts of equity, under the statute subjecting choses in action and equitable interest, to the, payment of debts.
Mayes, for plaintiffs.
The jurisdiction conferred by the sixth section of the act of 1820, (1 Digest, 505) in cases of fien facias, issued and returned by the proper officer “in substance, that the defendant hath no effects in his bailiwick, to satisfy the same,” is thus declared, “the proper court or courts of chancery shall have jurisdiction, on bill filed, to subject to the satisfaction of such judgment” &c. “any choses in action, belonging to the debtor, and also any equitable or legal interest in any estate, real, personal or mixed, which the debtor may be entitled to; and to that end* may bring other parties before the court, and make such decree as may be equitable, under the jurisdiction hereby conferred.” The jurisdiction conferred, is on the courts of chancery, not on the courts of common law; the jurisdiction is equitable, not legal, the decrees to be made, are to be equitable, by the express terms of the act conferring the jurisdiction.
It seems to this court, that the return of the execution “no property found,” does in substance coin-ply with the requisition of the statute, so as to placé the creditor in the predicament, for applying to a court of chancery by bill; but it seems to this court, that upon the matters of said bill, during the life of Daniel Grant, no decree in favor of the complainant can be made, such as a court of .equity ought to make.
it is therefore ordered and decreed, that the decree of the circuit court be reversed, and that the case be remanded with direction to that court to dismiss the bill with costs.
Plaintiffs to have costs in this court.