*Owsley* for plaintiff: *Turner* for defendants.

---

TURNER
*vs*
DAVIS' ADM'R.
which will bind both parties.

# Turner *vs* Davis' administrator.

### ERROR TO THE GARRARD CIRCUIT.

*Vested remainder. Husband and Wife. Witness. Evidence.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

THIS is an action of *detinue* for two slaves, *Milley* and her infant child, in which the administrator, *de bonis non,* of *James Davis,* deceased, recovered a judgment against *William Turner,* who had purchased the slaves from *Hester Teeter, Daniel Thornton,* and *Nancy Thornton*

DETINUE.

1bm151
110 135

*Case* 49.

*December* 21.

The case stated.

his wife, the first of whom claimed a life estate, and the last of whom claimed the remainder under the will of *George Teeter*, deceased, who was the husband of the said *Hester*, and the father of the said *Nancy*, who was also the relict of the said *Davis*.

In revising the judgment, three questions will be briefly considered.

*A vested remainder of a feme sole, in a slave, will not vest absolutely, in the husband on marriage, and unless reduced to possession during coverture, will survive to the wife.*

1. *Paris Teeter* testified, as a witness for the plaintiff in the action, and proved facts conducing to show that *Davis*, in his lifetime and whilst he was the husband of the present *Nancy Thornton*, bought the life estate of her mother, and died possessed of the said *Milley*. And the competency of this witness, who was objected to as incompetent, is first to be inquired into: for, according to the construction of a statute of *Virginia*, (re-enacted here, *Stat. Law*, p. 1477,) as is established by the Supreme Court of the former state, in the case of *Wallace and wife* vs *Taliaferro and wife*, (2nd *Call's Reports*,) and in several other cases, confirmed by the same Court in the case of *Upshaw* vs *Upshaw et al.* (2 *H. and Mun.* 381,) and virtually recognized since, as we think, by this Court in the cases of *Pinkard et al.* vs *Smith and wife*, (*Select Cases*, 335,) and *Banks' administrator* vs *Marksberry*, (3 *Lit. Rep.* 281,) and in other cases—a vested remainder of a *feme sole*, in a slave, will not vest absolutely, in her husband when she marries: but, like personal property, accruing to her during coverture and not reduced to actual possession or otherwise disposed of by the husband, will pass by operation of law to the survivor; and therefore, as we are disposed to recognize this as the true authoritative doctrine, *Davis' administrator* could not recover in this action without *P. Teeter's* testimony, tending to the deduction that *Davis* had, by purchasing and merging the life estate, acquired the possession of *Milley*, in his own absolute right, before his death.

*Witness is competent if his testimony preponderates against the party offering him.*

The objection to *Teeter's* competency is, that he is surety for *Mrs. Thonton*, who was once administratrix of said *Davis'* estate, but was removed by the County Court, in which she had been qualified as such. We cannot however feel much solidity in this objection: for, though the administratrix had included *Milley* in the inventory

of her intestate's slave, still if the *administrator de bonis non*, recover her and child, he can do so only on the ground that she was the property of *Davis;* and then *Mrs. Thornton* and her surities may become liable for hire: but if the administrator, *de bonis non,* fail to establish such title, *Teeter* may be exonerated as to these slaves. If he have any interest in the event of this suit, it would therefore seem to be against and not in favor of the party in whose behalf he testified.

2. The next objection to the judgment is that the title of the administrator had been clearly divested, by lapse of time, and therefore, that the verdict was not authorized by the evidence.

As more than five years had elapsed, from the date of the administrator's appointment to that of the institution of this suit, and *Turner* had been in the possession of the slaves during the whole of that interval, first under hire from Thornton, and afterwards as purchaser, there can be no doubt that the action was barred by time, unless his possession in fact, for some portion of the five years, should be deemed to have been under and not adverse to the administrator's title. The only fact relied on for thus defeating this bar, is the deduction from the inventory, that *Mrs. Thornton* had held the slaves as Davis', whilst she was the administratrix of his estate. But though, in the absence of any other proof, an estoppel might result from this circumstance, yet it does appear that, after she had been removed from the administration and before her successor had been appointed, she and her husband (*Thornton*) and her mother claimed to hold the slaves as their property, under *George Teeter's* will— for life to her mother, remainder to herself—and the administrator, *de bonis non,* had notice of this fact before he was appointed, and, of course, from the instant of his appointment. If the jury had no reasonable ground for doubting these facts, it was certainly their duty to find for *Turner*, for the doctrine is now well settled that a possession by a tenant or trustee, if adverse in fact, may be considered adverse also in law, from the moment when the landlord, *cestui que trust*, or his legal representative, had full notice of such adversary holding. And there-

Possession, of a tenant or trustee, if adverse in fact, *may* be considered adverse also, in law, from the time of notice of such adversary holding.

fore, upon the facts in this case, we must feel great difficulty in sustaining the verdict: but we will not decide this point, as the judgment must be reversed, on another, and the case remanded for a new trial.

3. The last question to be considered, and to which we just alluded, is whether the Circuit Judge erred in overruling a motion for a new trial, founded on affidavits of surprise, at the rejection of the deposition of *Joseph Kennedy*, taken in pursuance of sufficient notice, in an action depending on the same question, concerning the title to *Milley*, as that involved in this case, and under the following order:—

"*Daniel Turner and wife* vs *Paris Teeter—Detinue.* This day came the parties by their attorneys, and it is agreed that the deposition of *Joseph Kennedy, to be taken in the suit of James Davis' adm'r.* vs *William Turner*, is to be used in this case, subject to all legal exceptions."

*Kennedy's* deposition was material; the objection to it was that there had been no order for taking it in this case, and that it purports to have been taken in the other case. *Turner* made affidavit that there was an agreement to take it in his case; that it had been taken partly at his instance and expense, and that he was surprised at its rejection. And he proved, satisfactorily, the same facts by the affidavit of another person. But the administrator and his counsel made affidavit that they had made no other agreement than *what appeared in the order just quoted.*

Now it seems to us that, upon these facts, a clear case of presumed surprise is established. The order itself expressly imports that there was an agreement to take *Kennedy's* deposition in chief in this case, and that, when so taken, it might be read also in the case in which that order was made. And the deposition being taken virtually by *Turner*, for his own benefit, the fact that it purported to be taken for the other case, should be entitled to no prejudicial influence. He had a right to expect that it would be read in his case without objection.

Wherefore, the judgment is reversed, and the casue re-remanded for a new trial.

Owsley for plaintiff: Turner & Bradley for defendant.