*Pirtle & Speed* for plaintiff; *Fry & Page* for defend-
ants.

Ring, &c.
vs
Baldridge.

---

## Ring, &c. *vs* Baldridge, &c.

### APPEAL FOM THE FULTON CIRCUIT.

*Husband and wife.   Remainder.   Slaves.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court,

THOMAS MASON, by his will proved in 1812, devised
the rest and residue of his estate, (which included a fe-
male slave, by name, Beck,) to his wife for life, and at
her death to his daughter Harriet, then unmarried, and
her heirs forever.   After the death of her father Harriet
married Kyle, by whom she had three children, the pre-
sent plaintiffs, and Kyle having died, his widow inter-
married with Baldridge, the defendant.   Mrs. Mason, the
devisee for life, held possession of Beck and her children
until her death in 1845, when Baldridge, whose wife, the
devisee in remainder was still alive, took them into pos-
session.   Upon which the children of Mrs. Baldridge by
her first husband, brought this action of detinue for two
male slaves, the children of Beck.   The action was com-
menced even before the death of Mrs. Baldridge, the de-
visee in remainder, and mother of the plaintiffs.

Upon the facts stated, the interest of the testator's
daughter in the slave Beck, was a vested remainder, and
according to the decisions of this Court in many cases,
that interest did not, upon her subsequent marriage, vest
absolutely in her husband, but if the slave was not re-
duced to possession during the coverture, the interest,

DETINUE,

*Case* 129.

*August* 3.

Case stated.

A vested re-
mainder in the
slaves belonging
to the wife, does
not vest in the
husband upon
the marriage, &
unless reduced
to possession
during the life of

RING, &c.
*vs*
BALDRIDGE.

the husband, survives to the wife and not to the representatives of the husband.
(1 B. Monroe, 152; 4 Ib. 236; 5 Ib. 556.)

unless disposed of before the death of either, vested in the survivor. This principle was recognized in the case of *Turner* vs *Davis' administrator*, (1 *B. Monroe*, 152,) upon the authority of previous adjudications there referred to, and has been regarded and acted on as the settled doctrine in the more recent cases of *Thomas, &c.* vs *Kennedy*, (4 *B. Monroe*, 236;) *Greer's heirs* vs *Boone*, (5 *B. Monroe*, 556,) and other cases. The right of the plaintiffs rests upon the contrary assumption that by the marriage of the devisee in remainder with her first husband, Kyle, her interest vested absolutely in him, and upon his death descended to his heirs; and while the authority of the cases referred to and of the rules established by them is not denied, it is attempted to withdraw this case from their operation, on the ground that by the act of 1800, (2 *Stat. Law*, 1546,) slaves, so far as respects last wills and testaments, are to be deemed real estate, and pass by will in the same manner and under the same regulations; and it is contended that the cases referred to do not decide the question as it arises under this statute, or do not give to it its proper effect.

. It is to be observed, however, that the statute of 1798, (2 *Stat. Law*, 1476,) makes the general declaration that slaves shall be taken to be real estate, and shall descend to heirs and widows, &c., and that the question as to the rights of the husband marrying a woman who had a vested remainder in slaves, has been decided without any discrimination, founded on the manner in which the interest has come to her, whether by descent, by will, or by deed. In the case of *Turner* vs *Davis' administrater*, (1 *B. Monroe*, 152,) the title came to the wife by will. And although this question may not, in any of the cases, have been formally discussed and decided with reference to the operation of the act of 1800, above cited, yet the statute itself has received, in many cases, such a construction as establishes the principle that it does not make slaves real estate when devised by will, but only applies the same requisitions and gives the same effect in passing the interest to the devisee, to a will devising slaves as to a will devising land. We do not, therefore, regard the question now made upon the statute of 1800, as an open

question, and if it were, we could not decide that after the interest in slaves had passed to the devisee, it continued to be governed by the laws of real estate in virtue of this statute. And even if this were conceded, the consequence would be that as the interest of the devisee, Harriet, never came into possession during the life of her first husband, but continued an interest in remainder until long after his death, it never vested in him at all, and therefore, did not descend to his heirs; but that it remained in the wife as a remainder in land would, until the termination of the life estate, when being reduced to possession, the second husband, if it was real estate, was entitled to enjoy it during the coverture. In which case the plaintiffs, as heirs of the wife, would have no right of possession until after her death, and therefore, could not maintain this action brought during her life. But we are satisfied that the effect of the statute is fully exhausted when the will itself has fully taken effect, and that it has no further control, either of the quality of the estate or of the course in which it shall pass, after it has vested according to the provisions of the will. It is true this construction operates in the present case, to deprive the heirs of the devisee in remainder of all interest in the estate, but the opposite construction that the interest in remainder vested absolutely in the husband by the marriage, would, in all cases, deprive the wife herself of it, and take it from her heirs as such. The concession that the interest of the wife, so long as it continued to be a remainder, and until it vested in possession according to the will, should be regarded as real estate, would not help the present case, because it came into possession according to the terms of the will, during the life of the wife, and the will then ceasing to operate, the slaves being in possession vested absolutely in the husband then living.

Wherefore, the judgment is affirmed.

*Husbands* for appellants; *Harlan and Bullock* for appellees.