DAVENPORT
*vs*
PREWETT'S AD.

ring and proving
that there was
also a farther
consideration
which was ille-
gal and against
public policy.

*Craddock* for appellant; *Pirtle & Speed* for appellee.

---

## Davenport *vs* Prewett's Administrator.

DETINUE.

Case 34.

January 8.

Case stated.

ERROR TO THE JESSAMINE CIRCUIT.

*Grantor and grantee.    Infants.    Limitations.    Pre-sumptions..*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

THIS action of detinue was brought by the adminis-trator *de bonis non*, of Harvy Prewett, to recover seven slaves, (Rachel and her children,) from the possession of Davenport. The plaintiff's right of recovery was contested on two principal grounds: 1st, That the legal title to the slaves was never in his intestate; and 2d, That if it was, he had transferred it to his children by a deed read as evidence on the trial; and 3d, Some at-tempt was made to show that the action was barred by adverse possession.

I. The question whether Prewett ever had title to the slaves, arises on the following facts: In September,

1792, the will of John South was admitted to record in the proper Court of the State of Virginia, where he died in possession of a number of slaves, among whom was Rachel, the grand mother of Rachel now in contest. By one of the clauses of this will, the testator gave Rachel to his grand daughter, Elizabeth McClanahan, reserving to his daughter, Anne McClanahan, the use of her for life. After the testator's death, Elizabeth McClanahan, the grand daughter, intermarried with Harvy Prewett, and died in 1833, leaving her husband and five children, and also her mother, then Anne Rochester, the devisee for life, all surviving her. Harvy Prewett, the husband, died in 1840, and Anne Rochester, (the Anne McClanahan mentioned in the will,) died in 1843. The possession of the elder Rachel and her descendants, came to the devisee, Anne McClanahan, and remained with her until, upon her daughter's marriage, she placed some of them in her possession, and in 1834, she placed the younger Rachel with such children as she then had, in possession of Mrs. Davenport, her grand-daughter, but not a child of Elizabeth Prewett. Rachel and her children have remained with Davenport and wife, or under their control, ever since.

Construing the will as giving to Anne McClanahan the legal estate for life, and to Elizabeth McClanahan, then a *feme sole*, a vested remainder, to take effect in possession after the death of her mother, the doctrine seems to be well settled in this State, that upon her subsequent marriage during the continuance of the particular estate, this interest did not vest absolutely in the husband, but upon the death of either before the termination of the life estate, the title in remainder vested in the survivor. This rule is explicitly laid down in the case of *Banks* vs *Marksberry*, (3 *Littell*, 283–4,) as the result of a careful examination of all the cases. And upon that ground the right was decided in that case, not to be in the administrator of the wife, but in the surviving husband. The same rule is again explicitly laid down in the case of *Turner* vs *Davis' adm'r.*, (1 B Monroe, 152,) and the authority of various cases referred to. And in the case of *Greer's heirs* vs *Boone*, (5 B. Monroe,

A vested remainder in slaves to take effect after the death of tenant for life, does not vest absolutely in the husband of a female upon her marriage; but in case of the death of the wife before the termination of the life estate, the right vests in the husband.— (*B'ks* vs *Marksberry*, 3 *Littell*, 283–4; *Turner* vs *Davis*, 1 B. *Monroe*, 152; 5 *Monroe* 556.)

DAVENPORT
*vs*
PREWETT'S AD.

Though the pre-
sumption is, that
a party accepts a
deed which is
for his benefit,
yet such pre-
sumption may be
rebutted.

556,) it is recognized as well settled. Upon the author-
ity of these cases and of others therein referred to, we
must decide that on the death of Mrs. Prewett, the
vested remainder under the clause of South's will, above
referred to, survived absolutely to her husband, Harvy
Prewett, whence it follows that unless the right was
lost or disposed of in his life time, it passed to his ad-
ministrator after his death.

II. Then the question arises whether Prewett so dis-
posed of his title during his life, as to prevent its vesting
in his administrator. It appears that in 1835, after the
death of his wife, the devisee in remainder, Prewett,
then residing with his children in Jessamine county,
executed a deed purporting to be between himself, of
the first part, and his children by name, of the second
part, and to convey to them several slaves, stated to be
in his possession in Jessamine county, and also Rachel
and her children, and other slaves said to be in posses-
sion of Mrs. Anne Rochester, in Mercer county, and to
which it states said Prewett would be entitled after her
death. The deed expressly reserves a right in the gran-
tor to use and control the aforesaid slaves during his
life, and to receive the profits of their labor, and also
reserves to Mrs. Rochester, in case of her surviving
him, a similar right with regard to the slaves in her pos-
session. This deed, which is said by a witness who
deposed on the trial, to have been made for the purpose
of placing the slaves beyond the reach of an apprehend-
ed claim to alimony on the part of the grantor's second
wife, was acknowledged and recorded in the office of
the Clerk of the Mercer County Court, in which a por-
tion of the slaves may then have been, in the posses-
sion of Mrs. Rochester, the devisee for life, but in which
neither of the parties to the deed then resided. The
grantees were all minors, the eldest a female, being
then not more than ten or twelve years old, and since
married, and at least three of the others would seem to
have been still minors when this suit was brought, in
January, 1847. There is no evidence that any of them
ever accepted the deed or claimed under it, or that it
had ever been heard of by the plaintiff, or by any of

the grantees, until after this suit was brought, nor until a short time before the trial, in September, 1848, which was more than five years after the death of the devisee for life. The original deed was not produced, but upon an affidavit by the defendant, that the original appeared to have been withdrawn from the Clerk's office, and could not be found there, that he could not learn who had withdrawn it or in whose possession it was, and that the plaintiff on being called on for it, disclaimed all knowledge of it, a copy certified by the Clerk of the Mercer County Court, was read in evidence by the defendant without objection, there being some other evidence of the execution of such a deed by Prewett. The plaintiff then read, without objection, a paper executed a day or two before the trial by the children of *Prewett*, named as donees in said deed, except two, whose guardians had executed it with the other donees, which paper purports to release all claim to the slaves in controversy, so far as depends upon the deed above referred to, but to claim them in virtue of their relation to Harvy Prewett, deceased. There is no re-lessee named in the instrument, and it was proved to have been executed under advice, as a disclaimer of title under the deed.

Upon this evidence the Court, at the instance of the plaintiff, instructed the jury that if they believed from the evidence, that the deed of gift was never accepted by the grantees, or any of them, and that they never set up nor held title under it, it passed no title to them, and that the title still remained in the grantor. The verdict of the jury under this instruction, must be taken as finding the fact that the deed never was accepted by the grantees or any of them, nor any title set up under it. And not only is this conclusion authorized by the evidence already stated, but as this suit is certainly not brought for the personal benefit of the administrator, but for the benefit of the estate of his intestate, and so far as appears, for the exclusive benefit of his heirs, who are also the grantees in the deed, the inference is almost irresistible: First, That if the existence of the deed was known to the grantees before this suit was brought,

it was either rejected or it would have been laid hold of as enabling them to assert title in their own names, and the administrator would not have sued. And secondly, That if discovered at any time after this action was commenced, when five years from the death of the devisee for life had expired or was near expiring, with the palpable effect of barring a new action in their own names, they would have rejected a deed which, if operative at all, might defeat the present action, in the success of which they were deeply interested. It is true, it does not appear when the grantees, or any of them, were first apprised of the existence of the deed. But so far as appears, or so far as may be inferred, they rejected it as soon as they were apprised of it, and never claimed or consented to claim under it.

Assuming then as being sufficiently, if not conclusively established, that they never accepted the deed, the question is, whether this fact rendered the deed inoperative, so that it does not affect the administrator's title and right of action. If the non-acceptance of the deed is entitled to this effect, then the instruction is true as a proposition of law. And although the jury were not told either that the acceptance of a deed for the benefit of the grantee is presumed, nor that no positive act of acceptance, even after the deed was known, was necessary, but mere acquiescence or assent might be sufficient, yet as these explanations were not asked for by the defendant, and there is no ground for presuming that the jury was misled by the instruction as given, unless it be in itself erroneous as a legal proposition, the failure of the Court to make the explanations referred to, cannot be complained of. It is scarcely necessary to say that the presumption that a deed beneficial to the grantee has been accepted, is a mere presumption of fact, and that it neither precludes the grantee from refusing or not accepting the grant, nor proves conclusively that he has accepted it, but that it is liable to be rebutted by direct or circumstantial evidence.

A conveyance or grant *inter partes* necessarily implies a gran- Then a conveyance or grant *inter partes*, implying necessarily, a grantee as well as a grantor, is an executed contract, which like every other contract, requires

the mutual assent of both parties. One man cannot compel another to receive his property even as a gift, and to become the owner of it against his consent nor without it. And although in the absence of evidence to the contrary, the assent to receive a benefit will be presumed. Yet if this presumption is rebutted, so that it appears or may be assumed that the grant never was accepted or assented to after it was known to the intended grantee, then it will also appear that there never was a grantee in fact or in law, and therefore, that there never was a grant or transfer of right or property from one to the other party. And even if while the nominal grantee remains ignorant of the intended grant, or is incapable of binding himself by his own act or assent, his acceptance may be presumed for his benefit, still if upon being apprised of it or becoming capable of acting for himself, he dissents from and repudiates it, the same result follows, that there never was a grantee nor a grant, and that the title never passed from the nominal grantor. This presumption of acceptance does not operate to make the title pass by the deed, until it is rejected, but only as evidence that it did pass by reason of the acceptance of the deed. And when the presumption is disproved and the non-acceptance of the deed established, then it is proved that the tittle did not pass by the deed, because it was not accepted, and because, therefore, it could not vest any thing in the grantee.

*tee as well as a grantor, and the consent of both. If the grantee be an infant, he may repudiate the grant on arriving at full age— and the title in the mean time will not have passed to him.*

But it is contended that if Prewett had title to the slaves, he had a right to dispose of it as he pleased, that he did dispose of it by this deed, and that his administrator and his children are bound by this disposition, and that the latter especially, cannot renounce the deed conveying the slaves to them, and at the same time claim the slaves as heirs to the same grantor. But the right of the owner to dispose of his property to others, is qualified by the right of others to refuse it. His administrator, it is true, is barred by his deed, but not farther than he himself would be. And if the deed is rendered inoperative by the grantee's non-acceptance, it has no binding efficacy upon either. The question,

*If the father make a deed of gift of slaves to his children whilst they are infants, which they reject on arriving at full age, his administrator is vested with the right to them.*

however, is not whether the administrator could resist a claim made under this deed by the grantees therein, nor whether the grantees can claim as heirs or distributees, while they renounce the benefit of the deed. The material enquiry is, whether the title passed to them by the deed, or whether remaining in the grantor, it passed to his administrator on his death. And this enquiry has been already sufficiently answered, unless because the grantees were the infant children of the grantor, their acceptance of the deed or grant was unnecessary, or is to be conclusively presumed. But the circumstance referred to cannot change the nature nor dispense with the requisites of a valid conveyance or transfer of title. Whoever may be the grantee, his assent, actual or implied, is essential to the vesting of the title in him, and therefore, essential to its passing from the grantor. Nor do we perceive any principle upon which the act of the father, either in making a deed to his infant children or in accepting a deed made to them by a stranger, should be conclusive upon them as to the acceptance of such deed. They would not be conclusively barred even by their own act. And it would be strange if they should be concluded by the positive or implied assent of their father, upon whom they could not confer a valid authority to act for them, and whose authority as conferred by law, is conferred with an exclusive view to their benefit. So far as the father acts for himself, his acts obligatory upon himself, may also be obligatory upon his representatives, real and personal. But in accepting a deed made to his children, he acts for them. And it would be a cruel perversion of the principles which the law has established for their protection and benefit to say, in the first place, that whenever he makes a deed to his children of whatsoever nature, his acceptance of it for them is to be conclusively implied; and in the second place, that although they may have been, at the time, and for years afterwards, wholly ignorant of these acts, and have never received any actual benefit from them, they are bound by the acceptance, actual or implied, of their father for them, and cannot, upon becoming apprised of the deed, either

accept or reject it, as may then be for their advantage. Such an option could not be denied to an adult grantee and *a fortiori*, it must be conceded to infants.

If a lease be made to an infant, and he enter and derive a benefit from it during his infancy, he may still avoid it for the future, by repudiating it when he comes of age. And if he has never entered nor derived any benefit from it, he may, on arriving at age, avoid it *ab initio*. And so, if it be a lease to take effect at a future day, which does not arrive until after he comes of age, he may reject it altogether; and this he may do although he actually and knowingly accepted the lease in his infancy. Much more may he do it with respect to a lease made during his infancy, without his knowledge, from which he has neither received nor claimed any benefit, and the operation of which, when discovered, would be prejudicial to them. It would seem that in such a case, some positive act of acceptance or assent would be requisite to make the lease, when discovered, obligatory upon the lessee. And we are not satisfied, and cannot admit, that the right of the lessee would be in any respect changed by the fact that his father had, during his infancy and without his knowledge, accepted the lease for him.

In the present case, the deed professed to pass no immediate interest, but a remainder to be enjoyed in possession, after the expiration of two lives then in being. It was made in the infancy of the grantees, and without their knowledge. They never received or claimed any benefit from it, but remained ignorant of its existence, until another title (that of the administrator,) was asserted and in the course of prosecution for their benefit, and until it might well be more to their advantage, as seems to have been supposed by their legal adviser, to acknowledge the title of the administrator, and abide by the remedy instituted by him, than to defeat or embarrass it by attempting to set up title in themselves under a deed of which they had never heard before, and which might at last prove unavailing for their purpose. Under such circumstances, we are of opinion that even if the administrator had found the

DAVENPORT
*vs*
PREWETT's AD.

An infant may reject a lease made to him in infancy upon his arriving at full age, though he may have accepted it in infancy, or his father accepted for him.

DAVENPORT
vs
PREWETT'S AD.

original deed among the papers of the intestate, the grantees would have had a right to claim under it or not, at their option, and with the effect of making it as between the parties, operative or inoperative from the beginning. And if the original has never been in their power, we cannot conceive that they would be bound to assert title under an unauthorized record, or other more uncertain evidence of it, to the destruction of the administrator's suit, nor that the defendant in that suit can by such evidence place the title in them against their will.

Under every point of view then, we are of opinion that the question of the acceptance or non-acceptance of this deed, and of its operation as dependent upon acceptance or non-acceptance, was an open question, upon which there was nothing to conclude either the grantees as to their election, until it was in fact made, and nothing to preclude the jury from finding the fact according to their own reasonable deductions from the evidence. And as we are satisfied that the instruction on this subject was correct in point of law, and that the verdict finding in effect that the deed had never been accepted by the grantees is sustained by the evidence, it follows that the verdict and judgment cannot be successfully impeached, on the ground either that Prewett never had title to the slaves in question, or that he had so disposed of it that it did not vest in his administrator, but his children.

III. With regard to the possession of the slaves by the defendant, it is proved by the uncontradicted testimony of the only witness who spoke of the manner in which it was acquired, that Rachel, with her children then born, had been delivered to Mrs. Davenport, (in 1834,) by her grand mother, Mrs. Rochester, the devisee for life, under an arrangement or agreement, that for their labor Mrs. Davenport was to sew for her grand mother, or to do her sewing. And although the defendant adduced evidence to prove that the possession had been held from that time under claim of right in himself or his wife and children, inconsistent with the title in remainder, and as by gift from the tenant for life, not only

No possession by the vendee of the tenant for life can prejudice him in remainder during the duration of the life estate.

is there no evidence that the tenant for life ever attempted, or intended to give a greater interest than she had, but none conducing to prove that any such claim was asserted with the knowledge either of the tenant for life, or any party interested in the remainder; and if there had been conclusive evidence of these facts, still as the right of action under the title in remainder did not accrue until the death of the tenant for life, no previous possession derived from her could operate as a bar under the statute of limitations. And the action having been in fact brought within five years after the death of the tenant for life, there was no bar by possession or limitation. The instructions moved for by both parties on this particular subject were given, and that given for the plaintiff, was correct.

There was no evidence of any title or right in the wife or children of the defendant, which could have authorized the inference that the possession was in them and not in the defendant himself. And for this reason, if there were no other, the only instruction refused to the defendant, was properly withheld. Nor was there any error in giving the third instruction given on the plaintiff's motion, as the evidence therein referred to was before the jury, and was proper for their consideration.

The several objections to testimony offered by the plaintiff and admitted by the Court, are deemed untenable, and need not be detailed. And we have only to add, that although the will of John South, recorded in Virginia after the separation of Kentucky, would not, for want of being recorded in Kentucky, have protected the title in remainder against creditors or purchasers claiming under the tenant for life after a possession of five years, it is sufficient evidence of title against the defendant, who as a mere volunteer, stands in no better condition than the heir or adminstrator of the tenant for life.

Wherefore, perceiving no error to the prejudice of the defendant below, now plaintiff in error, the judgment is affirmed.

*B. & A. Monroe* for plaintiff; *Ballinger and J. & W. L. Harlan* for defendant.