Judge Marshall
delivered the opinion of the Court.
This bill was filed by Paschal H. Sanders, to recover one-fifth of $370 and interest, alledged to have been received in 1819, by G. W. Sanders, deceased, as guardian of the complainant and four other infant children of Becky Sanders. It appears that the five wards were the children of the said G. W. Sanders by his first wife Becky Sanders; that before their marriage the father of Becky Sanders had died, and certain slaves of his estate had been allotted to her mother as dower, that after the death of the dowress who survived her daughter Mrs. Sanders, G, W. Sanders having been previously appointed in Virginia; the guardian of his five children, purchased at the sale of the dower slaves a boy the offspring of one of them; and retained out of the price about $350, on account of the reversionary interest of his deceased wife in the dower slaves. In 1845, G. W* Sanders, after having had another set of children by a second wife, departed this life and left a will which was duly admitted to record, whereby after a specific pro¿ vision for his wife and younger children until their maturity, he directed an equal division of the proceeds of his entire estate except a few small legacies; among all of his children, taking into consideration the advancements made to them which he particularized in the will. This bill was filed in 1848 against his executors; by one of the children of the first marriage, to whom •according to the statement of the will three hundred •dollars had been advanced.
The answer filed by one of the executors, after stating the manner in which the money was received or *41 retained as above detailed, calls on the complainant to state if the money claimed by him in this suit was not •derived from and the proceeds of slaves which had been allotted to the mother of the complainant’s mother for her dower in the slaves of her husband, the father of complainant’s mother, before her marriage; and denies that his testator at any time received and collected any money in his character as guardian for complainant, or as an individual, that complainant was entitled to, unless the money above mentioned was legally and properly going to complainant. This interrogatory was unanswered.
The defendant also contends that if any thing was due by the testator to the complainant, he is precluded by the will from claiming it — and the will is relied on asa bar to the claim. We are. of opinion however, that the will furnishes no evidence on this subject. The parol testimony to the effect that the testator intended to satisfy the claim of his first children, by the equal division directed in the will is inadmissible for that purpose ; and so much of the depositions excepted to as relate to that matter was properly rejected. But upon the pleadings and evidence, we are satisfied that the complainant and the other children by the first marriage had no pecuniary claim against their father unless one arose on the facts' above stated. Nojj do we find any evidence of the recognition of such claim by the father, except that shortly before making his will, he expressed a doubt whether, as he had received this money in right of his first wife after her death, it ought, not to go to his first children, which doubt was after-wards resolved by the consideration that his second wife had been of as much advantage to his first children as the sum received by his first wife amounted to; and he made no provision for paying that sum to them. Nor, if it was due to them, can it be regarded as being satisfied or extinguished by the equal division directed among all his children, which he directed, not as a módé' • *42 of paying his first children, but because he thought h@ owed.' them nothing.
Slaves assigned to the widow for dower in the estate of the husband, vest in the distributees subject to the claim of dowel, and up on the marriage of one of the fem-aledistributees vests in her husband, and though the feme distrib-utee dies before the dowress, the husband of such distributee is entitled to the interest which vested in his wife before the death: Turner vs Davis, (1 B. Mon., 152; 4 lb. 236; 5 lb. 556; 7 lb. 535; 9 lb. 95; 10 lb. 412; 3 Litt. 263-64,) decide that if the wife die during the continuance of the particular estate in slaves, the right vests absolutely in the husband as survivor.
Assuming, as upon the record we must do, that the claim of the complainant is founded upon the receipt by his father in right of his mother, of her interest or portion in the slaves of her father, which had been allotted to her mother for dower before her own marriage, and that the doweress outlived her daughter, and died- during the life of the daughter’s husband, by whom his wife’s portion in the dower estate was afterwards reduced into possession; we think it entirely clear that the children of the first marriage had no right or interest in it as heirs or distributees of their mother, but that it belonged absolutely to their father as surviving husband ; and that even if he supposed himself to be under an obligation in law or conscience to pay or account for it to her children and as their guardian, this mistake as to the law imposed no liability, and conferred no right legal or equitable, but the question remained subject to his own determination, of which no one has a right to complain. The allotment of the slaves as dower, made of course with the assent of the executor or administrator, vested the title not only in the dowress for her life, but also in the heir or heirs for their reversionary interest. And this vested legal interest must be regarded as at leastt equivalent in all respects to a vested remainder. But it is well settled by repeated adjudications in this Court, that if a woman mandes, having at the time a vested remainder in slaves expectant upon a life estate, which outlasts the coverture, this interest, if not reduced into possession nor otherwise disposed of during the coverture, survives to, and vests absolutely in the surviving husband or wife; Turner vs Davis' adm’r., (1 B. Mon., 152.) Thomas, &c., vs Kennedy, (4 B. Mon., 236.) Greens’ heirs vs Boone, (5 B. Mon., 556.) Ring, &c., vs Baldridge, &c., (7 B. Mon. 535.) Davenport vs Prewett, (9 B. Mon., 95.) Banks vs Marbury, (3 Litt. 263-4,) and Morrow vs Whitesides ex’r., (10 B. Mon., 412.)
Fox for plaintiffs.
According to the principle of these cases, the interest of the feme in a vested remainder in slaves held before marriage, does not vest absolutely in the husband by the marriage, but if .the wife die first and during the continuance of the particular estate, it vests absolutely in the husband as survivor; and certainly when after the termination of the particular estate he reduces the interest to actual possession, it is absolutely his free from the claim of the representatives of the wife. Now if there is any difference between a vested remainder in slaves expectant upon the termination of a life estate., and the interest of an heir in slaves allotted to the ancestor’s widow as dower, it is that the latter interest is the most absolute and immediate of the two, and therefore there is more ground for saying that it vests absolutely in the husband by the marriage. But waiving any discussion of this point, the analogy between the. two cases is sufficient to place the right of the husband in the reversionary interest herein described, upon a footing at least as favorable to him as his right in the vested remainder. And this, which we are inclined to think is the true doctrine on the subject is sufficient for the present case, and is decisive against the claim of the complainant.
Wherefore the decree allowing the claim is revei’sed and the cause is remanded with directions to dismiss the bill.