## Knight *et al. vs* Donahoo's heirs.

ERROR TO THE MUHLENBURG CIRCUIT. ·

*Competency of witnesses.. Limitation of a Chattel.*

JUDGE MARSHALL delivered the opinion of the Court.

CHANCERY.

*Case* 75.

*September* 20.

THERE was no error in admitting the deposition of Elizabeth Donahoo. She had no legal interest in giving her husband an estate for her life, in the slaves, rather than a fee simple; and any bias which she may have had in establishing a limitation in favor of her own children, rather than a descent to the heirs of her husband, would not affect her competency.

The widow was competent, as between the administrator of her second husband & her children by the first husband, to prove that her father gave her the slaves in contest for life, with remainder over to her children.

The limitation being proved ·by herself and another witness, must be regarded as sufficiently established, and seems, moreover, to have been a probable and just disposition of the slaves, under the circumstances; and although the gift to E. Donahoo for life, and to her children upon her death, was by parol, yet as the possession was delivered to, and held by her husband, under that gift, we are of opinion, that in a contest between his general heirs and the children of his wife, to whom the remainder was limited, the terms of the gift must prevail. In such a contest we do not perceive why even the voidness of the limitation over, should operate to enlarge the express life estate of the wife, for the benefit of the husband and his heirs.

It cannot be admitted at this day, that the gift of a chattel for an hour, or even for life, vests the absolute ownership in the donee.

Wherefore, the decree is affirmed.

*Morehead & Reed* for plaintiff: *Owsley & Goodloe* for defendant.

A parol gift of a slave for life, with remainder over to the children of tenant is good, and vests an interest in remainder.

PETITION FOR A RE-HEARING,

By Messrs. Morehead & Reed.

WE venture to recall the attention of the Court to this case, with the assurance that it has been only after the

most deliberate and confirmed conviction, that our cli-
ents have not received the law of their case, that we have
gained our own consent to do so.

Benjamin Donahoo died in 1835, without will, leaving
several children, a part the fruits of his first marriage, and
three of them by his second wife, Elizabeth. The dece-
dent also left certain parcels of real estate, and three
slaves. The plaintiffs here intermarried with two of his
daughters, children of his first wife, and they, with their
wives respectively, filed their bill in the Muhlenburg Cir-
cuit Court, against the administrators and heirs of their
ancestor, (Benj. Donahoo,) praying that these lands and
slaves might be sold and the proceeds distributed amongst
all the plaintiffs and defendants, who were heirs aforesaid.
The bill is aptly drawn under the act prescribed for such
state of case, and the proof accurately corresponds with
its allegations. As to a part of the defendants, the bill
was taken for confessed. As to another part, answers
were filed and consent yielded to a sale of the lands, but
the right of the plaintiffs to a sale and division of the
slaves as the heirs of Benjamin Donahoo, was denied.
Mrs. Donahoo, his widow, and William and Joseph Don-
ahoo, two of his children by his last wife, occupy this
latter ground. Elizabeth Ingleheart and William Ingle-
heart, the husband of Elizabeth, she being the only re-
maining child of the last marriage, seem not to have an-
swered the bill, and are, therefore, included among those
of the defendants as to whom the bill was taken *pro con-
fesso.* The ground upon which the prayer of the com-
plainants for a sale of the slaves was resisted, may be
as clearly stated in the language of the answers of these
three defendants, (old Mrs. Donahoo, William and Joseph
Donahoo,) as in any other way. Mrs. Donahoo says that
her father gave her the slaves "on the following terms and
conditions and no other:" "that she was to hold them du-
ring her life, and then they were to go to her three chil-
dren by Donahoo, and her said husband received them in
that way, and always held them in that way and no other."
William and Joseph Donahoo, (who answer by their
guardian *ad litem*,) say "that these three negroes never
were the property of their said father, but that they were

given to their mother during her life and then to go to her three children by Donahoo, two of which are these defendants."

Such then are the grounds upon which the defendants have chosen to rest their defence to this proceeding. We propose to argue, that if every thing here asserted be true, still the case is clearly and indisputably for the appellants; and it is so contended upon the ground that the limitation over to the children of Mrs. Donahoo was *void*, thereby making her intended life interest an absolute fee simple estate, which by law vested in her husband, (Benjamin Donahoo,) the instant it passed from Noftsinger, the father of Mrs. Donahoo, to her.

Blackstone, in the second volume of his Commentaries, page 398, holds the following language: "By the rules of the ancient common law, there could be no future property to take place in expectancy, created in personal goods and chattels, because being things transitory and by many accidents subject to be lost or destroyed, or otherwise impaired, and the exigencies of trade requiring a frequent circulation thereof, it would occasion perpetual suits and quarrels, and put a stop to the freedom of commerce, if such limitations in remainder were generally tolerated and allowed. But yet in last wills and testaments, such limitations of personal goods and chattels, in remainder after a bequest for life, were permitted, though originally that indulgence was only shown, when merely the use of goods and not the goods themselves, was given to the first legatee—the property being supposed to continue all the time in the executor of the devisor. But now that distinction is disregarded, and therefore, if a man, by deed or will, limits his books or furniture to A, for life, with remainder over to B, this remainder is good." Such was the rule of the ancient common law as quoted at length, and after a most faithful scrutiny of many cases, we have not been able to find a single one in which the doctrine was differently stated. All the elementary books coincide with this text, and it has received repeated judicial recognitions in the reported cases. We have not been able to find a case in which it has been so much as made a question at common law,

KNIGHT *et al.*
*vs*
DONAHOO'S H'S.

whether such a limitation (without deed or will,) was good. A statute of our own State, (1798, *Digest*, 1477,) expressly adopts the common law rule on this subject in the following language: "and no remainder of any slave or slaves, shall or may be limited by any deed or last will and testament, in writing, of any person whatsoever, otherwise than the remainder of a chattel, personal by the rules of common law, can or may be limited, except in the manner hereinafter mentioned and declared." And as the after-mentioned exceptions in the statute have nothing to do with this question, we shall not delay to enumerate them. This statute has been adjudicated upon in Kentucky, and the common law, as recognized by it, declared to be the law of this land: *Keen and West* vs *Macey*, (3 *Bibb*, 39;) *Moore's heirs* vs *Howe's trustees*, (4 *Monroe*, 219;) *Murphy* vs *Riggs*, (1 *Marshall*, 533.) In this case the defendants claim neither under will nor deed. At common law, the slaves must vest in the father. Our statute re-enacts the common law. A former bench in this Court have so expounded the law, and now these principles are, for the first time, overruled. We say they are overruled, because, although it may be inferred from the general reading of the opinion in hand, that the Court have looked upon this question as *avoided* by some collateral deductions from the record, yet we think, they have really nothing to do with the case; and the Court do expressly say that "it cannot be admitted *at this day,* that the gift of a chattel for an hour, or even for life, vests the absolute ownership in the donee." The Court then think it cannot be admitted that such and so *is the law at this day*, of course conceding that such was anciently the rule, but a rule not now to be observed, because of the present advanced condition of our jurisprudence. There are doubtless cases daily occurring in which the genius of an enlightened jurisprudence, as well as the difference in our political institutions from the mother country, require such a course. We regard this rule of law, however, as not among that class, and we do think its continued observance is required by the most obvious policy. We think few laws are founded in more or better reasons—the class of property to which the rule

is made to have reference, "being things transitory, and by <span>KNIGHT *et al.*<br>*vs*<br>DONAHOO'S H'S.</span> many accidents, subject to be lost, destroyed, or otherwise impaired, and the exigencies of trade requiring also a frequent circulation thereof, it would occasion perpetual suits and quarrels, and put a stop to the freedom of commerce if such limitations in remainder were *generally* tolerated and allowed."

And may we not suggest that the whole science of the law consists of minute dependencies, (either intimate or remote,) which unimportant though they be in their separated condition, yet each so far constitutes one of a series of regular connections that the "harmonious whole" is in danger when any one of its parts is violated. A principle should not be disregarded because it is ancient, nor a stone removed from the building because it is not perceived to be the key to the arch. Why is it that at common law, in a remainder of this sort, a distinction is taken between a devise of the thing itself and the *use* of the thing? It is because, in the one instance the devise is *executed* or past, in the other only *executory;* and why, we might be asked, this preference? It is sufficient to say, so is the law, and the whole judicial world has acted on it. Why is a remainder in tail of this sort, void by the laws of England, even in a *deed* or *testament,* when such remainder in fee simple, under similar circumstances, would not be void? Why is it that a free gift in fee simple to a friend, upon defect of heirs, will escheat to the Commonwealth and not revert to the donor? Justice demands a different rule, yet no Judge would fail to repudiate the claim. Why is a seal necessary to a deed? We are answered, the statute is positive ; and in this case the statute is equally injunctive—for by it no remainder in a personal chattel can be limited by deed or last will and testament, otherwise than at common law; and this statute, we think, even "at this day," should not be disregarded.

But we remarked that the Court had not expressly adjudicated this question, by deciding the position we have combatted to be the law, *in hæc verba,* but lay great stress upon the fact that "as the possession was delivered to, and held by the husband under the gift, they (we) are of opinion that in a contest between his general heirs and

the children of his wife, to whom the remainder was lim-
ited, the terms of the gift must prevail.   In such a con-
test, they (we) do not perceive why even the voidness of
the limitation over should operate to enlarge the express
life estate of the wife, for the benefit of the husband and
his heirs."   So far as the *facts* are concerned, out of which
this branch of the opinion originates, (for the present,)
we are disposed to concede them, and this done, we con-
fess we are at a loss to appreciate the difficulty of the
Court, arising from the mere fact that "the possession
was delivered to, and held by the husband, under the
gift," unless it be upon the ground that the husband there-
by became the trustee of his infant children, and was es-
topped to deny their title.   If the husband had received
the slaves as the mere trustee of his children, they having
an *immediate vested interest* in them, then it would be true
that he would not have the shadow of claim to them, and
would be estopped to deny their claim in any way what-
ever; then all this matter of law, which we rely upon,
that the remainder over, after the life estate, was void,
would have nothing under the sun to do with the case,
because it would not be in it.   The absolute estate was
vested in the husband by the delivery of the slaves, ac-
companied with the above limitation, and it could not be
fettered by the condition annexed to the gift, if it be the
law that the remainder is void, unless equity can revivify
that which the law makes void.   We have to see the first
case in which a Court of Equity can interfere to set up a
claim, *void in law;* equity follows the law, it never runs
counter to it; it is but the handmaid of the law.   A deed
without a seal is void in law ; equity cannot give it life,
but it may set up a good deed, if *lost,* and invest the
grantee with the legal title.   So here is an estate void in
law, but fettered with a condition which is a mere *inci-
dent* to the legal estate, and that incident, because it savors
of equity, in a Court of Chancery, is to control its prin-
cipal, and absolutely give life to that which is *void.*   But
"the husband held under the gift," as the proof says, "he
claimed them in that way and intended to deed them to
his children."   Suppose A buy a slave for $500, and
pay the money, and afterwards, holding the slaves all the

time, give out in speeches that he is holding the slave as the trustee of B, a stranger, and afterwards B, (not being a creditor,) sue for that slave, is A estopped to deny B's title? Not so. Why? Because the slave was his absolutely, in the first place, and no estoppel can take place, because there has been no change of title by mere speeches to that effect. Here is a void remainder which, by operation of law, makes the tenant for life a tenant in fee simple—that fee simple tenant says he holds for his children, and forsooth, the children assert title in a Court of Equity, because the father said he held under them. To our minds it is the case of A and B just put. The fact that the father claimed his own property under A, B, and C, and that he intended to make a deed, should be construed to be what it strictly is, that the claiming of a man's *own property* under another, does not divest him of the property, and the intention to make a deed is a mere unexecuted intention, and passes no title till the deed is executed. The Court say that they do not perceive ''how the *voidness* of the remainder should operate to enlarge the express life estate.'' The Court did not perhaps recollect that if the remainder was void, the three children had no channel to claim through; they were the remaindermen; if the remainder was void and did not enlarge the life estate, the slaves of course reverted to Noftsinger, the grand-father, for the life estate of the husband is exhausted, and the limitation to the children is a nullity; and yet the plaintiff, (without Noftsinger's heirs being brought before the Court,) are divested of their title to these slaves, as heirs of their father, in favor of another set of heirs, whose claim comes through a limitation declared by the Court to be void. It is no answer to this objection, that it was the place of the plaintiffs to bring Noftsinger's heirs before the Court: *Violet, &c.* vs *Stephens, (Littell's Select Cases,* 147.) At all events, the defect of parties does not justify the divestiture of our title, which has been done, it at most should have operated a dismissal of the bill without prejudice.

The truth is, however, that the voidness of the limitation does enlarge the life estate. If a gift be made of a personal chattel in tail, whether with or without deed

or testament, the tenant in tail takes the whole estate absolutely: see *Bacon's Abridgement, vol. 6, title Remainder, letter A*, and numerous authorities there cited.

There are other matters in this case to which we had designed calling the Court's attention, but we are warned to desist by the length this petition has already reached. We will barely suggest, in conclusion, that Ingleheart and wife, (children by Dohahoo's last marriage,) have not answered the bill, and the entry of the decree confessing the bill, is "as to all the defendants who have not answered," and this is at least effectual to pass the one-third of the remainder to Donahoo's general heirs, which the Court did not do.

A re-hearing is asked.

MOREHEAD & REED,
*By W. D. Reed.*

RESPONSE,

By Judge Marshall.

NEITHER the statute nor the cases referred to in the petition decide that a remainder in a slave, after an estate for life, is void, if limited by parol. But as the cases show that slaves are susceptible of such a limitation, and as the statute declares that the entire title may pass by parol, we do not see in those cases, or in the nature of the thing, any reason why such limitations as the subject itself is susceptible of, may not also be made by parol. The policy of the law, with regard to creditors and purchasers, does indeed require, in general, that where the title is separated from the possession, there shall be written and even recorded evidence of the title. And to prevent fraud and perjuries, it has also declared, that no action shall be brought upon contracts of a certain description unless they be in writing. But this case is not within the statute of frauds and perjuries, nor does it involve the rights of creditors or purchasers. Both parties claim under the same gift. The complainants are strangers to the gift, but claim as heirs of the husband of the donee for life. The defendants are the donees in remainder. The complainants are mere volunteers. The claim of the defendants stands on the same consid-

*A remainder in a slave after an estate for life, is neither void by the statute or common law.— Tho' to be effectual against creditors or purchasers, should be declared by writing duly recorded, &c.*

eration of love and affection which prompted the gift to their mother for her life ; they come within the words as well as within the consideration of the gift. And it is the volunteers who come into equity to defeat one part of the gift, by extending the other part beyond either its own import or the manifest intention of the donor. They claim that the estate expressly given for life is a fee-simple, or an absolute interest, not because the remainder attempted to be engrafted on it makes it a fee tail, which the law converts into a fee-simple ; not because the remainder is illegal, or impossible to be made or take effect according to its terms, but because it is declared orally and not by deed. Suppose then no remainder had been declared, would a gift of the slaves for the life of the donee, be a gift of them forever, because it was by parol and not by deed ? If so, it would only be because of the ancient rule of the common law, that a gift of a chattel for any period was a gift of it forever. And if a man cannot limit a gift by parol to the life of the donee, he cannot limit it to ten years, or to one year, or to a day, but a gift for any one of those periods would be a gift forever. But this ancient principle or rule of the common law did not apply to the mere mode of making or declaring the gift, but to the fact itself of a gift or grant, which was considered, when applied to so fleeting and unimportant a thing as a chattel, as importing an absolute transfer, which could not be restrained by attempting to limit the duration of the gift. For, not only was the thing itself deemed incapable of being further limited after it was once given, but the donor was regarded as having lost his power over it by the first gift. But the inconvenience of the rule led to an early departure from it, first in the case of wills, and then in case of deeds. And the principle has not, as we think, any existence at the present day, as a rule of law. It cannot now be said either that a chattel is not susceptible of a limitation, to take effect after a life estate, or that the power of the donor is gone, by having given it for life. By the more liberal construction of modern times, no such exclusive or technical effect is given to the single word "give" or "grant," as that it cannot be restrained by other words,

intended to limit or explain its meaning, but the extent of the gift is determined by the aggregate effect of all its terms. The intention of the parties will be ascertained by reasonable construction, and if that intention be neither against law nor required to be expressed in a particular form, it should have effect, whether expressed verbally or in writing. If it could possibly be said, that a gift of a chattel or of a slave to A. for life without more, could not sufficiently show that any interest was intended to be reserved to the donor, and might therefore pass the absolute interest to A. The same reason would not apply if there were an express reservation to the donor after a gift for life, nor if there were an express loan to A. for life, which would imply a reservation of the absolute right or reversion in the donor. But a gift to A. for life, with express reservation of the reversion to the donor, would be but a loan in effect, giving the use only to the donee for life, and retaining the absolute right in the donor. And if this right can be reserved by parol after a loan or a gift for life, or for five years, as we think it undoubtedly may be, it cannot reasonably be said that it cannot be limited to another by parol. The cases referred to in the petition, and others decided in this Court, in which the gift or grant has been by deed or will, make no discrimination between such instruments and a parol gift or grant: *Banks* vs *Marksbury*, (3 *Littell*, 279, *et seq.*) In the case of *Betty* vs *Moore*, (1 *Dana*, 235,) a parol reservation after the death of the donee was held bad, not because it was by parol, but because by the terms of the gift the first taker would have had an estate tail, and therefore had the absolute right. And the fact that the Court in that case made no discrimination between a gift by parol and one by deed, in laying down the general doctrine, but decided the case upon a construction of the parol words not entirely clear, and not upon the fact that they were parol, shows conclusively, we think, that in their opinion that fact was not decisive of the case, and being ourselves of that opinion in this case, the petition is overruled.