M'GRAW *vs* DAVENPORT AND WIFE.

1. Where a testator gave to his wife a life-estate in certain negroes, and then proceeded to declare, that at her death, the negroes mentioned, should be equally divided, by valuation, between his two daughters, and added—" or should either of them (the daughters,) die without issue, the other is to get the whole of the negroes, and their increase,"—it was held, that the time when the bequest over was to take effect, was, at the death of the wife, and that upon the death of the wife, the property vested absolutely in the two daughters :—in other words,—

2. That the two daughters took vested remainders in the negroes, subject only to the contingency of their not living to enjoy; and being both alive at the death of their mother, the contingency never happened, and the property vested absolutely in them.

3. Touching the construction of wills, all the cases agree, that the words 'die without issue,' when used in a will, as a limitation over of personal property, unexplained or controlled by any other circumstance, or language in the will, indicating a different intention,—import an indefinite failure of issue, and create a perpetuity, which is not permitted, and the effect of such limitation is, in law, to vest the entire property in the first taker :

4. Nevertheless, an irreconcilable diversity exists, in relation to the language or circumstances found in other parts of a bequest or will, which shall be sufficient to indicate the intention to confine the limitation over, to a dying without issue, at the death of the first taker.

5. If the distinction made in reference to lands and personal pro-

perty in *Forth vs Chapman*,* were true, but which is doubtful,—the distinction fails when applied to a mixed bequest of male and female negroes, or of female negroes only.

6. The rule in *Shelly's case*,† is merely a sacrifice of the particular, to the general intent of the testator.

Error to the circuit court of Autauga County.

Action on the case. Plaintiffs at the September term, eighteen hundred and thirty four, of said court, declared against the defendant, for that whereas the said defendant, whilst Louisa, one of the plaintiffs, was sole and unmarried, to wit, on the first day of January, eighteen hundred and thirty three, at said county, was indebted to said Louisa in the sum of twelve hundred dollars, for money before that time had and received by the said defendant for her use, and being so indebted, in consideration thereof, promised to pay the same when requested, And also, that said defendant on the day and year mentioned, was indebted to said plaintiff, Louisa, she being then sole and unmarried, in the further sum of twelve hundred dollars, for money before that time by said Louisa lent and advanced to defendant. And being so indebted, he, defendant, on the day and year aforesaid, undertook and promised the plaintiff, then sole and unmarried, to pay the same on request—all of which he had failed in doing, &c.

To this declaration defendant pleaded, *non-assumpsit*, a set-off, and the statute of limitations.

And at the spring term of eighteen hundred and thirty six, of said court, a jury came, who being elected, tried and sworn, well and truly to try the issue joined between the parties, upon their oaths said, they found for the plaintiffs, and assessed their dama-

---

*1 P. Wms. 663.                    †1 Salk.

ges at fifteen hundred and sixty dollars: It was therefore considered by the court, that the plaintiffs recover of defendant the said sum of money, so assessed by the jury, together with the costs in this behalf expended, for which execution might issue, &c. From which judgment there was a writ of error, &c.

The bill of exceptions stated that on the trial of the suit, plaintiffs produced and offered to read in evidence, a copy of the last will and testament of William McMorris, a copy of which was appended to the bill. Defendant's counsel objected to the introduction of said copy, as evidence, on the ground, that the same was not authenticated in the mode required by the act of Congress on the subject, and the said copy, as the same was produced, was not evidence. This objection the court overruled, and permitted the evidence, so certified, to be read to the jury. The plaintiffs then proved that after the death of William McMorris, a portion of the slaves named in the said will, and bequeathed to Cynthia and Louisa McMorris, came into the possession of the said Cynthia, as a part and portion thereof, under the said bequest, and after she was so possessed of the said slaves, she intermarried with defendant, and that the said slaves passed into his possession. That the said Cynthia afterwards died in child-bed, the child being still-born. That afterwards the defendant offered to deliver the slaves, so secured, to the said Louisa, and tendered them to her. That she refused to receive them, and did not receive them, and was then of full age. The defendant also proved by Thomas Stone, that said Louisa lived a his house, and that Stone informed her that he wa about to purchase said slaves of the defendant, and that she expressed her approbation, and said she was glad of it, as they were getting a good home. The plaintiff proved that afterwards the defendant purchased the interest of the witness in the mercantile firm of Stone & Parsons, incurring also the liabilities of the

2

said witness for the debts of said firm; that in payment of said purchase, the witness received of the defendant several slaves; and among others, the slaves bequeathed and allotted to the said Cynthia, as above stated; that no money was paid to the defendant. Said slaves, so bequeathed, were estimated at twelve hundred dollars, and they were received on the express condition, that the defendant had a right to redeem them, on paying the witness twelve hundred dollars, at any time within three years after the contract. That the contract of sale or barter, was made in the month of July, in the year eighteen hundred and thirty two or thirty three. There was no evidence adduced of any money having at any time come into the possession of the defendant from the sale or barter of said slaves, nor as to the state or condition of the said firm of Stone & Parsons; whether it was involved in debt and had failed, or whether said firm had prospered and had realized pay or profits on the sales of the stock, for which the said slaves were sold or bartered: nor was any evidence given to shew whether said slaves had been redeemed or not, under the contract above stated. There was no evidence adduced to shew that a demand had at any time been made of the defendant of the said slaves, or of the sum or value at which they were estimated, at the time they were sold or bartered as aforesaid, to the said Stone; but proof was made, that afterwards, said negroes were seized by plaintiffs, and were recovered by Thomas Stone in a suit against them. On this testimony the court charged the jury, that if they believed that the said Cynthia and Louisa survived the testator, and that the said Cynthia afterwards received into her possession, her moiety of the slaves named in the said bequest, and died without issue in being, leaving the said slaves in possession of the defendant, that then the said Louisa became entitled to said slaves; and that if they should further be-

lieve that the said McGraw, had sold or disposed of said slaves in payment or satisfaction of a stock of goods, or an interest in a mercantile firm, and that they were estimated at the value of twelve hundred dollars—they were authorised to find that amount for the plaintiffs, and interest thereon from the time of such sale; and that the said Louisa had not divested herself of her interest in said slaves by the conduct stated.

Defendant then asked the court to charge the jury, that if they should find, from the evidence, that the wife of the plaintiff, before intermarrying with the plaintiff, she being of full age, had made a verbal gift of the slaves so bequeathed and claimed, and had refused to receive them when tendered to her, that then it was in law a valid disposition. This charge the court refused to give, and charged, that the conduct above described, on the part of the said Louisa, did not transfer or convey her interest or right in said slaves. The defendant then requested the court to charge the jury, that if they believed from the testimony adduced, that the slaves bequeathed to the said Cynthia, had been disposed of for an uncertain interest, to wit, a share in a mercantile firm, and to incur the liabilities of the member of the firm with whom he contracted, the amount of such liabilities not being ascertained, and no proof of money having been received by the defendant, that then the action for money had and received, could not be maintained. This charge the court refused to give. The defendant then requested the court to charge the jury, that if they should, from the evidence, believe that the sale of the slaves made by the defendant to Stone, was a conditional sale, the defendant having the right to redeem the slaves at any time within three years from the time of the sale; and if the term in which the defendant had the right to redeem said slaves had not expired before the commencement of this suit, that then the suit

could not be maintained—which charge the court re-
fused to give. The defendant's counsel then reques-
ted the court to charge the jury, that in this action,
no demand of payment having been proved, they
could not allow interest on the sum for which the
slaves had been sold from the time of the sale; which
the court also refused. To all which charges, &c. the
defendant excepted.

The last will and testament of William McMorris,
was dated the twenty-fifth of February, eighteen hun-
dred and twenty three, and admitted to probate in
the court of Ordinary of Fairfield District, South
Carolina, on the twenty fourth day of October, eigh-
teen hundred and twenty five.

The copy of the will and its probate, received in
evidence on the trial of the case, was authenticated as
follows : "Ordinary's office, Fairfield District: I, John
R. Buchanan, Ordinary of Fairfield District, South
Carolina, and presiding judge of the said court of Or-
dinary, to which court of Ordinary there is no clerk,
do hereby certify that the foregoing contains a full
transcript of the proceedings in said court, upon the
probate of the will of William McMorris, deceased;
and that this attestation is in due form of law.    Wit-
ness my hand and the seal of said court, this———day
of———A. D. 1835.

(Signed)      John R. Buchanan, Ordinary."

The will provided, that all the just debts of the tes-
tator should be paid out of the last year's crop of cot-
ton, then on hand, and the present year's crop, with
such of his stock, household furniture or plantation
utensils, as the executor might think proper to part
with for that purpose ; and if the above mentioned
property was not sufficient to satisfy the debts, he al-
lowed a negro man named Ishmael to be sold, and the
proceeds arising from such sale, or a part thereof, as
the case might require, to be applied to the discharge
of his debts.

He bequeathed to his wife, E. M., whatever balance might remain of the price of the negro man, after the debts were paid, or should there be sufficient to pay the debts without selling the negro Ishmael, then the said negro to be her's, to dispose of as she might think proper. He also gave to his wife, during her life time, three hundred and fifty-four acres of land, part of the tract on which he lived, and six negroes, to-wit, Clary, Moll, Maria, Silvey, Phillis and Charlotte, to be her's during her life time: also the stock, furniture and plantation tools, such as should not be sold to pay debts, to be her's, to dispose of as she might think proper, for the support of the family, or otherwise to be given to the children at her discretion.

He bequeathed to his son, W. M., at the death of his wife, a negro boy Willis, and should his said son, W. M., die without issue, he allowed the negro to go to his son H. W. M. He bequeathed to his son H. W. M. one hundred and thirty acres of land, the north end of the tract on which he lived, and at the death of his wife the three hundred and fifty-four acres, be-queathed to her during her life. He also gave to his son H. W. M., at the death of his wife, the negro girl Charlotte; and her issue should she have any, to W. M.

He bequeathed to his daughter, Louisa M., when she married or became of age, a negro woman named Silla, and her second child, named Creecy, with any other issue she might have, to be her's during the life of his wife. He also gave to his daughter, Cynthia M., when she married or became of age, a negro girl named Nan, with her issue, should she have any, du-ring the life time of his wife. And at the decease of his wife, he allowed part of the negroes above men-tioned, namely, Clary, Moll, Maria, Silvey, Siller, Creecy and Nan, with their increase, should there be any, to be equally divided, by valuation, between his two daughters, Louisa and Cynthia, or should either of them die without issue, the other was to get the

whole of the seven negroes and their increase. Should there remain on hand at the death of his wife, any thing of the stock, furniture, and plantation tools, &c. undisposed of by his wife, he allowed whatever remained to be equally divided, by valuation, between his two daughters, Louisa and Cynthia, or should either of them die without issue, the other was to get the whole of the stock, household and kitchen furniture, plantation tools, &c. not disposed of by his wife.

Having given to his son-in-law, J. M., the husband of his daughter J., deceased—to his son-in-law, P. C., the husband of his daughter M.; and to another son-in-law, the husband of his daughter H., deceased, what he thought to be their equal dividend of his estate, he deemed it unnecessary here to mention them further. He then appointed executors, and revoked all former wills, &c.

The plaintiff in error here assigned for error, the charge given as contained in the bill of exceptions, and the refusal to charge as therein requested.

*Thorington*, for the plaintiff in error.
*Goldthwaite & Campbell*, contra.

ORMOND, J.—The father of Mrs. Davenport, made his last will, by which he bequeathed certain negroes to his wife, during her life, and at her death, to his two daughters, Louisa and Cynthia, by a clause in the following words—"At the decease of my wife, I allow a part of the negroes, above named, and bequeathed, viz: Clary, Moll, Maria, Silvey, Siller, Creecy and Nan, with their increase, should there be any, to be equally divided, by valuation, between my two daughters, Louisa and Cynthia; or should either of them die without issue, the other is to get the whole of the seven negroes, and their increase." The wife of the testator died, and the negroes were equally divided between the two daughters, before their marriage. The plaintiff in error mar-

ried Cynthia, and the defendant in error Louisa. Cynthia died, and her husband, the plaintiff in error, sold the negroes which were allotted to his wife. The action in the Court below, was brought to recover the price of the negroes. On the trial, the Court charged the jury, that if they believed that the said Cynthia and Louisa survived the testator—that the said Cynthia afterwards received into her possession her moiety of the said slaves, named in the said bequest, and died without issue in being, leaving the said slaves in the possession of the defendant, that then the said Louisa became entitled to said slaves. Several other charges were given on other points raised in the cause, but the view we take of the case, renders it unnecessary to consider them. The charge above given was excepted to, and is now assigned for error.

The counsel for the plaintiff in error contends, that the limitation over, after the death of the first taker, being after an indefinite failure of issue, is void; and that the entire property vested in the first taker. The counsel for the defendant in error, maintained the converse of this proposition, and insisted, that the limitation over, was not too remote, but was good by way of executory devise.

All the cases on this subject, (and they are very numerous,) agree, that the words "die without issue," when used in a will, as a limitation over, of personal property, unexplained, or controlled by any other circumstance, or language in the will, indicating a different intention, do import an indefinite failure of issue. If this were allowed, the consequence would be, to tie up the property bequeathed, and render it unalienable for an indefinite period of time; thereby creating, what, in law, is called a perpetuity. This being against the policy of the law, is not permitted; and the effect of such a limitation, is, in law, to vest the entire property in the first taker.

But although the decisions on the effect of the words above cited, without any explanatory language, or cir-

cumstance, in the will, evincing a different intention on the part of the testator, have been uniform, yet an irreconcilable diversity is found to exist both in England and the United States, on the language, or circumstances, found in other parts of thebequest, or of the will, which shall be sufficient to indicate the intention, to confine the limitation over, to a dying without issue, at the death of the first taker. Some of the earlier cases, have proceeded on the character of the property bequeathed; and while they held the words in question, to import an indefinite failure of issue, when the subject matter of the devise was land, when the same words came to operate on personal property, they ruled, that from the transitory and fleeting nature of personal property, it was unfair to suppose, that an indefinite failure of issue was intended; and construed the words to mean, a dying without issue at the death of the first taker.

The case of *Forth vs Chapman*[*] is one of the leading cases in which this distinction was taken; it has been since followed by many other cases, and again repudiated by names of equal authority, and greater in number. The argument in this aspect, has been strongly pressed by the defendants counsel, and although we are not prepared to say that the distinction is well founded, yet, if it were true in relation to personal property, in general, its application fails, when applied to a mixed bequest of male and female negroes; or as in this case, of females only. The laws impressed on the human race, by the Creator, for its preservation, render it at least reasonably certain, that at any given future period of time, a number of female slaves, will be found to have increased.

It is a very general remark, and was made by counsel in this case, that in most cases where these limita-

---

* 1 P. Wms.

tions of personal property have been construed, to be a limitation over, after an indefinite failure of issue, that violence is done to the intention of the testator; and that that intention is sacrificed for the preservation of a technical rule of law. It is true that in cases similar to the one which produced the celebrated rule, called the rule in Shelly's case, this may be true—as where an estate is given to one expressly for life, with remainder to his heirs, or to the heirs of his body, in fee or in tail. To make a construction, which gives to the first taker, an estate in fee or in tail, which by levying a fine, he can convert into an estate in fee, would serve to contradict the intention of the testator: but in truth, it is only sacrificing the particular, to the general intent of the testator. And, in most cases, we believe, that the intention of the testator is correctly ascertained, by construing these words, "dying without issue," to mean, an indefinite failure of issue, where they stand alone, and are not controlled by any thing else in the will.

We do not therefore come to the examination of this question, as many judges seem to have done, struggling to extricate ourselves from the trammels of a technical rule of law, which if established, would in all probability, contradict the intention of the testator; but, we consider this like all other cases, in which a will is to expounded. The only question is, what was the testator's intention?

We are relieved from the necessity of threading the labyrinth of cases to be found on this subject, by the construction we put on the clause of the will now before us.

The testator, in the first place, gives to his wife a life estate in the negroes—he then proceeds to declare, that at her death, seven of the negroes, (naming them) shall be equally divided by valuation, between his two daughters, Louisa and Cynthia: then comes these words, " or should either of them die without issue, the other is to get the whole of the seven negroes, and their increase." At what time did the testator contemplate the contingen-

6p                    41

cy of a dying without issue was to happen; and on the happening of which, the bequest over was to take effect, if at all? Was it at the death of his wife, or was it at any after period? To our minds, it is most clear, that the contingency was not postponed to a later period than the death of the wife. He first directs the property to be equally divided, by valuation, between his daughters at his wife's death; but considering it as probable that one of them might die, and without issue, before that event should happen, he provides for that alternative, and in the most natural manner possible: "or should either of them die," &c. The grammatical construction of the sentence accords with our view. The disjunctive particle *or*, divides the sentence into two parts, and shows that the latter provision was only to take effect, in the event the first part of the clause could not be effectual, from the death of one of the daughters, before the death of the mother. The language in which it is couched fortifies the position. Had the testator intended to postpone the contingency of dying without issue, to any period subsequent to the death of his wife, and of course after the division of the negroes, it is most improbable he would have used the language, "the other is to get the whole of the seven negroes." The use of these words shows that he contemplated the event to happen, if at all, before a division of the property, and of course before the death of the wife. Had he been looking to some future period of time after the death of the wife, his language would have been, *the other to get her share*, or some equivalent language. The concluding part of the bequest, puts the matter beyond all controversy; it is in these words: "Should there remain on hand, at the death of my wife, any thing of the stock, household or kitchen furniture, plantation utensils, &c. undisposed of by my wife, I allow whatever may remain, to be equally divided, by valuation, between my daughters, Louisa and Cynthia; or should either of them die without issue, the other is to get the whole of the stock, household and

kitchen furniture, plantation utensils, &c. *not disposed of by my wife.*" The structure of this part of the clause, is precisely the same, as the part before commented on; with the addition of the words, "not disposed of by my wife." These words, in our opinion, must silence all doubt as to the true construction of the will. By saying that the "other is to get the whole of the stock, &c. not disposed of by his wife, he discloses what was passing in his mind at the time; the language is conclusive to show, that he intended that the contingency should not be postponed, to a later period than the death of his wife.

It has been previously stated, that there have been many decisions, which turned exclusively on the fact, that the subject matter of the bequest was personal property. If it could ever be allowed to construe the same words in a will, differently, according as they related to real or personal property, it would certainly be in a case where the property consisted of such things as perish in the using —as in this case, "stock, plantation utensils, &c." The argument, that a perpetuity could not be intended, in such a case, is difficult to be resisted, and has governed the decision of a multitude of cases, which, as they are familiar to the bar, it is not necessary to cite. Yet we find this last mentioned bequest, not only in the same will, but a part of the same clause, relating to the same persons, and couched in the same language.

The result of the whole, is a full conviction, on our minds, that the limitation over was not too remote; the contingency being to happen within a life in being. The two daughters, under this clause in the will, too, vested remainders in the negroes, and other property, subject only to the contingency of their not living to enjoy it. The daughters being both alive, at the death of their mother, the contingency never happened; and the property vested absolutely in them. A division, as the record shows, took place, and by the marriage of the plaintiff with Cynthia, he became the owner of the slaves.

It may not be improper to add, that effect could not be

given to the argument of the learned counsel for the defendant in error, without construing 'or,' in the bequest, to mean *and;* so as to make the bequest read, "*and* should either of them die without issue," &c. Without determining what the true construction would be in that aspect, it is sufficient to say, that this is never done but in cases where it is absolutely necessary, to carry into effect, the manifest intention of the testator—and where, without such alteration, the plain intention of the testator would be defeated. It is never done, when the will, as it stands, admits of a sensible construction—as in the case of *Richardson vs Spragg*[*]—The testatrix bequeathed a legacy, to such of her daughters, or daughter's children, as should be living at her son's death. Some of her daughters survived that period, who had also children, and others were dead, leaving children. The question was, whether the children of the living daughters should be let in to a share of this bequest, or the children of the deceased daughters only, as substituted in the place of their mothers. And it was decreed at the Rolls, that all the children, as well of the living as of the deceased daughters, should participate in the legacy. Sir Joseph Jekyl, observing that *or* should be taken for *and;* otherwise the whole devise would be void for the uncertainty; and that it was the same as if the bequest had been "to such of my daughters, *and* their children, as shall be living at my son's death. So if the devise had been, "to my children *or* grand children," my children *and* grand children would have taken.[†] The judgment of the court below must be reversed.

---

* 1 P Wms. 433.     † See also 2 Cox 213; 2 Atkins 643.