## PRICE, ET AL. v. PRICE.

1. A life estate being conveyed by deed in certain slaves to husband and wife, and upon the death of the survivor, remainder to the heirs of the wife—Held, that as there were no words securing a separate estate to the wife, the legal effect of the deed was to create a life estate in the husband, with a contingent remainder to the heirs of the wife; and that on the death of the wife before the destruction or termination of the particular estate, the remainder became vested in the heirs of the wife.

ERROR to the Circuit Court of Jackson.

Detinue, for certain slaves, by the plaintiffs against the defendant in error.

Upon the trial, the plaintiffs read in evidence a deed, as follows:

Know all men by these presents, that I, Richard Price, of Warren county, State of Tennessee, for and in consideration of the natural love and affection I have for my daughter Polly Woods, have bargained and delivered to her a negro girl named Mary, and her child named Patty, with their increase, to have and to hold the said negro slaves during the natural life of my said daughter Polly Woods and her husband Drury Woods, or the survivor of them, and at the death of said Polly and Drury Woods, the said negro slaves, with their increase, to be returned and delivered to the right and legal heir or heirs of the said Polly Woods, it being the intention of this instrument to convey a life estate in said slaves to my said daughter and son in law. And I do hereby warrant and defend the said negro slaves to the said Polly and Drury Woods, from the claim of all persons whatsoever.— In witness whereof, I have hereunto set my hand and seal, this 4th day of April, 1810.

RICHARD PRICE, (Seal.)

Plaintiffs then proved that the negroes sued for were the children of the slave Mary, mentioned in the deed of gift; that Drury Woods and his wife were both dead, without issue, he having survived her, and that they were the heirs at law.

The court charged the jury that the deed of gift vested the absolute property in the slaves in Drury Woods; that the plaintiffs could claim nothing in virtue of the remainder; but that upon the death of Drury Woods, they descended to his heirs at law.

The charge of the court is assigned for error.

ROBINSON, for plaintiff in error. The gift of the wife is inoperative, as it is not to her sole and separate use, and therefore vested in the husband. The remainder therefore, to the heirs of the wife was good, and did not unite with the life estate so as to give him the fee.

If the wife took an estate jointly with her husband for life, the remainder to the heirs of the wife alone, the remainder will not vest in the tenants for life, as the remaindermen do not claim as heirs to both tenants for life. [4 Cruise, title 32, ch. 22, sec. 13, 14, 15; 4 Kent's Com. 221.]

The rule in Shelly's case not applicable to this country; but if applicable at all, not to personal property.

S. Parsons, *contra*—Referred to and relied on the rule in Shelly's case as decisive of the case, within the precise terms of which, he contended, this case came. That the word " *heirs*" was to have its legal signification, unless clearly controlled by the accompanying words, which was not the fact here. [He cited Doe v. Fonnereau, Douglass, 505, note; 8 Yerger, 9 to 26 ; 9 ib. 209.]

ORMOND, J.—The gift of the slaves in controversy in this case, is to Polly Woods, " to have and to hold said negro slaves during her natural life, and that of her present husband, Drury Woods, or the survivor of them ; and at the death of the said Polly and Drury Woods, the said negro slaves, with their increase, are to be returned and delivered to the right and legal heirs of Polly Woods ; It being the intention of this instrument to convey a life estate in said negroes to my daughter and son-in-law."

Drury Woods and his wife have both departed this life, without issue, he being the survivor, and the question to be determined is, what estate did Drury Woods take under the deed?

It is impossible to doubt that it was the intention of the donor to give to the husband and wife a life estate only in the slaves, and that on the death of the survivor they were to go to the heirs of the wife ; and the only question is, whether there is any rule of law which will thwart this intention, and give the husband the entire interest in the slaves.

The obstacle to carrying into effect the intention of the donor is, by the counsel for the defendant in error, supposed to result from the use of the word *heirs*, in the remainder over ; the legal effect of which he insists is, to convert the life estate of the ancestor into the absolute title to the slaves.

The rule of law relied on is an ancient canon of the common law, known as the rule in Shelly's case. [1 Rep. 93.] " Where the ancestor, by any gift or conveyance, takes an estate of freehold, and in the same gift or conveyance an estate is limited either mediately or immediately to his heirs in *fee* or in *tail*, the terms *heirs* are words of limitation and not words of purchase." The effect produced by the rule is, that in all cases coming within its influence, the remainder is merged in the particular estate, which is thereby enlarged or expanded into an estate in *fee* or in *tail*, so as to permit those in remainder to take either as heirs general, or as heirs of the body of the first taker, which they could not do if

the ancestor took only an estate for life. When, however, it is apparent that the words " heirs" or " heirs of the body" are used as descriptive of individuals and not of the general line of heirs, they are considered words of purchase ; that is, they indicate the object, and limit the scope of the gift ; and although those to whom the gift is thus secured may be heirs of the first taker, they do not take as heirs, but directly from the donor, and therefore take by purchase.

What shall be a sufficient indication of this intention, so as to render the rule inoperative. is a point of no small difficulty, and has given rise to more controversy than any other question in our law. It appears, however, to be settled, that the word heirs, or heirs of the body, when used alone and without explanation, are always considered as words of limitation, and not words of purchase:—that if it appears that by the term heirs, the donor meant the general line of descent from the ancestor, the rule will prevail, no matter how strong the intention may appear to make them take as purchasers. In Jones v. Morgan, [1 Bro. C. 220,] Lord Thurlow gives the reason, " that if the donor meant that every other person who should be *heir* should take, he meant what the law would not suffer him to do, *to make the heir take as purchaser.*" The learning on this subject has been exhausted by Mr. Fearn, in his work on Remainders. [See also the recent work of Hayes on Limitation, and the tables constructed by him, in which the leading authorities are collated and contrasted. Law Library, vol. 7 ; also, 'the plain and satisfactory view of Chancellor Kent, in the 4th vol. of his Commentaries, 206.]

It was also an ancient rule of the common law, that a remainder could not be limited upon a chattel, but that a gift for life carried the entire interest. This was however afterwards permitted by way of executory devise, and finally by deed. [ 2 B. Com. 398 ; 1 Thomas' Coke Litt. 516, 20, a, Harg. note 5 ; 2 Kent's Com. 285.]

To apply the law to this case. A gift of land to husband and wife for their lives, with remainder to the heirs of the wife, would, by the operation of the rule in Shelly's case, by annexing the remainder to the life estate, give the wife a fee simple title. [Alpass v. Watkins, 8 D. & E. 516 ; 4 Cruise Dig. tit. 32, ch. 22, § 17.] But the subject of the gift in this case is personal property ; and as the estate is not expressed to be for the separate use

of the wife, upon well established principles, the marital rights of the husband immediately attached, so as to vest him with the entire life estate. The legal effect of the deed, in this aspect, was a life estate in the husband, with remainder to the heirs of the wife; and as the heirs of the wife are not necessarily the heirs of the husband, and in fact are not so in this case, the limitation was good as a contingent remainder, which upon the death of the wife before the destruction or termination of the particular estate, became vested in her heirs. [2 B. Com. 169; Fearn on Rem. 8.]

It may be objected that this is entirely departing from the deed, which contemplates the wife as taking a life estate; but it must be observed, the question is not merely what the donor intended; but what is the legal effect of that intention when ascertained.

It is perfectly clear that he intended not only that the wife should jointly, with her husband, take a life estate in the slaves, but also that her heirs should take a *vested* remainder in the slaves, the enjoyment of which was postponed until the death of herself and husband; yet neither of these intentions can be carried into effect. Not the first, because a gift to the wife, without qualification, is in law, a gift to the husband; nor the second, because it is plain he intended that the *heirs* of the wife should take as such, and did not intend by the use of that term, to limit the estate to certain individuals then existing; but on the contrary, designed that the person or persons who might be the heir or heirs of the wife at her death, should take the estate in remainder; or in other words that they should take both as heirs and as purchasers. This intention, it has been shown in the preceding part of this opinion, is one which the law will not enforce, and we are therefore to consider what is the legal effect of the deed, the intent being such as the law will not carry into effect. As already stated, it is to give the husband the entire life estate, instead of a joint estate, between him and his wife; and a contingent instead of a vested remainder to her heirs. It was at the option of the husband whether this remainder should ever vest, as it was certainly in his power to destroy it by a sale of the slaves before the death of the wife, the contingency upon which it was to vest. This, it appears, he did not think proper to do, and thereby indirectly permitted the intention of the donor to be effectuated.

It results from this examination, that the court erred in its charge to the jury, and its judgment is therefore reversed, and the cause remanded.