GREER'S HEIRS.
vs
BOONE.

---

CHANCERY.

Case 115.

## Greer's Heirs *vs* Boone.

APPEAL FROM THE MEADE CIRCUIT.

*Deeds of gift. Remainder. Husband and wife. Survivorship. Equity.*

June 30.

JUDGE BRECK delivered the opinion of the Court.

The case stated.

IN 1802, John Wiseman, by his deed of that date, and which was duly recorded, gave to his daughter, Elizabeth Greer and her children, a female slave. The terms in the deed, by which the gift was made are these: "I give her, (Elizabeth Greer,) a negro girl named Rose, which she has now in her possession, and which I do by these

presents, give unto her and her children, lawfully begotten of her body, and the increase of said negro likewise, and whenever my said daughter Elizabeth shall die, then the said negro shall be equally divided, with her increase, amongst my said daughter Elizabeth's children, male and female equally."

Elizabeth Greer had, at the date of this deed, several children, and among them a daughter, by the name of Elizabeth, who afterwards married Robert Brown.

In 1825, Lawrence Greer, the husband of Elizabeth, died, and not long afterwards his daughter, Elizabeth Brown died.

In 1835, her husband, Robert Brown, transferred all his interest in the estate of Lawrence Greer, to Hiram C. Boone and George Calhoun, including the slave Rose and her children, who were described as belonging to the estate.

In 1837, Calhoun assigned his interest acquired under the purchase from Brown, to Boone, and about this time Brown died.

In 1840, upon the death of Elizabeth Greer, Boone exhibited this bill against the administrator and heirs of Lawrence Greer, setting up claim to the interest of Elizabeth Brown and her husband, in the estate of said Lawrence, including the slave Rose and her children, and praying a settlement and division of the estate.

Shortly after the exhibition of this bill, the slaves were divided by Commissioners appointed by the County Court, among the heirs of Lawrence and Elizabeth Greer. Two of the slaves, Sampson and Mary, were allotted to the heirs of Elizabeth Brown, who were directed to pay John Greer two hundred and forty dollars, to equalize the division.

The heirs of Elizabeth Brown, who were made defendants by Boone, contested his right to any interest in the slaves.

They alledge that their father was improvident and left them destitute of means for their support; they insist that the complainant acquired no interest in the slaves by his pretended purchase, and even if he did, that a Court of

Equity aught not to aid him in enforcing a hard and sharping bargain.

Decree of the Circuit Court.

The Circuit Judge adopted the allotment made by the County Court Commissioners, and decreed to the complainant the two slaves, Sampson and Mary, and also decreed against John Greer, in whose possession the two slaves had remained after the division, $440, for their hire, $240 of which he was permitted to retain in discharge of that amount which the heirs of Elizabeth Brown were bound to pay him to equalize the allotment; the balance of $200 he was decreed to pay the complainant.

From that decree John Greer and the heirs of Brown have appealed to this Court.

The first question for our determination arises upon the deed of Wiseman. Under that deed we are of opinion Elizabeth Greer took an estate for life, and her children an estate in remainder. It was the intention, we think, of the donor, that all the children, after born as well as those in being at the date of the deed, should take. The case of *Turner* vs *Patterson, &c.*, (5 *Dana*, 292,) may be cited as authority in support of this construction.

Deed of gift of slaves, by deed, by a father to his married daughter and her children, to be divided equally between them at her death, vested an estate in remainder in such as were in being, and in after born children as they came in being, and which vested in the husband of the female children upon marriage, and on their death vested absolutely in the husband by survivorship.

Elizabeth Brown, therefore, took under the deed a vested remainder in the slave Rose and her issue, which, upon her death vested as the doctrine is now well settled, absolutely in her husband by survivorship, and which he had a right to sell and transfer: (*Clancy on rights, 12;*) *Banks* vs *Marksbury*, (3 *Litt.* 280;) *Thomas* vs *Kennedy*, (4 *B. Monroe*, 275,) and authorities there cited.

But it is contended that the interest vested in this case, in the surviving husband, subject to an equity in the children of his wife, for a support. It is very clear that a Court of Equity would not have aided the husband nor his assignee, during the life of the wife, in acquiring her interest in those slaves, until suitable provision had been made for her support, including her children. The appeal in her behalf would have been made with peculiar force, as the husband was improvident and in very destitute circumstances.

The doctrine seems also to be well settled, that when a settlement has been made upon the wife during her life,

it will, upon her death, survive and descend to her children; and it has been so held where there has been only an order by the chanceller, or an agreement for a settlement during the life of the wife. But whether the children, after the death of their mother, have an original equity, independent of her, which will entitle them to a provision out of the equitable assets, before the husband can have the assistance of a Court of Equity to obtain possession of them, is a question upon which the opinions of eminent Judges are at variance.

The equity of the children has been recognized by some of the English Chancellors, and by others denied. The subject is fully examined by Clancy and the authorities referred to, (*See Clancy on rights*, 532.) He concludes a chapter upon the subject by saying, that "it seems it may be now safely asserted to be the law of the Court, that the children have no right to a provision out of their mother's equitable portion after her death, unless there has been a decree or an agreement to that effect, in her lifetime, of which she has not relinquished her benefit."

In this case the children have no claim to a provision except upon the ground of an original equity, which we are not prepared to admit.

But it is urged that no interest in the slaves passed by the transfer of Brown, and even if there did, that a Court of Equity ought not to lend its aid to the complainant for enforcing his purchase.

In considering this question, it will be necessary to advert briefly to the pleadings and facts in this case.

The complainant in his original bill, alledges that Lawrence Greer died seized and possessed of a large estate, consisting of slaves and personalty; that the slaves were ten in number, one of them a woman named Rose, &c.; that there are also notes, bonds and personalty to the amount of $1,000. He then alledges "that he purchased in conjunction with George Calhoun, all the interest which Robert Brown, who married a daughter of Lawrence, held or ought to be entitled to as one of his distributees. He exhibits the writing evidencing the purchase from Brown, and prays a settlement and division of the estate. The writing, or transfer, describes the

GREER'S HEIRS
*vs*
BOONE.

Tho, the Chancellor will, at the instance of a wife, interfere to prevent property about to come into her husband's possession in her right, from passing into his hands where she is destitute; yet after the death of the wife her children have no right to any such provision out of the estate of the mother, unless there has been a decree or agreement to that effect during the life of the mother.

slaves, as belonging to the estate of Lawrence Greer, and recites that the said Brown having married Betsy Greer, a daughter ef said Lawrence, he would, upon the death of his widow, be entitled to one child's part of the whole of his estate. Brown, then, for the consideration of $250, transfers to the complainant and Calhoun, all his title and claim to said slaves and their increase, and to all the estate of said Lawrence, of every description whatever.

After the defendants had answered, and set up claim under the deed of Wiseman, the complainant exhibits an amended bill, in which he alledges, that Lawrence Greer died, leaving a will, by which he attempted to dispose of the slaves in question. That a controversy arising between the heirs and devisees under the will, it was agreed to destroy the will, which was done, and administration granted, and that the property was to be subject to the laws regulating decedent's estates.

Two agreements appear to have been entered into, between the widow and a portion of the heirs, shortly after the death of Lawrence Greer. By the first, the widow was to take her thirds of the estate, and the estate to be divided as if there had been no will. By the second, made shortly afterwards, the heirs, who signed it, release to the widow their right and title, during her life, to the slave Rose and her children, and agree that they shall not come into the administration of the estate of said Lawrence, but at her death, be divided between all children of Lawrence Greer. In both these agreements, the slaves were manifestly regarded as belonging to the estate of Lawrence Greer.

It is also evident from the transfer from Brown, that they were so regarded. The complainant so claims them in his orignal bill, and he does not, in his amended bills, set up any distinct claim in any other way. They seem to have been so regarded by the heirs, or most of them.

What were the contents of the will of Lawrence Greer, is not shown. The complainant says he attempted to dispose of the slaves by his will, but does not state in what way. How far, if at all, the fact that he had made a will, and that it had been destroyed, may have embar-

rassed a sale by the heirs, or by Brown, is, to be sure, a matter of conjecture. But, we think it very apparent from the whole record, that the heirs, that Brown and the complainant, and Calhoun,, were under a mistake as to the title of the slaves. They seem not to have been ignorant of the deed of Wiseman, but to have not understood its legal effect. It may have been, and probably was supposed, as is now contended by a part of the heirs, that upon the death of the widow, the slaves would pass, under the deed, to such of her children as might be then living. Upon this supposition, we may account for the effort on the part of the complainant, to establish the agreement between the widow and a portion of the heirs. We can only account for the great inadequacy of consideration paid by the complainant and Calhoun to Brown, for the transfer, upon the ground that his interest in the slaves, was supposed to be doubtful or contingent; that he was not entitled, under the deed of Wiseman, or that his interest might be affected by the will of Lawrence Greer, and made to depend exclusively upon the agreements referred to.

As evidence of the inadequacy of the consideration, the complainant, in 1837, appears to have paid Calhoun $300 for his half of the purchase from Brown, for which they had paid only $250, less than two years before. The two slaves allotted to the complainant, were valued by the Commissioners at $1,100, besides $200 decreed him for hire. What amount he obtained on account of Brown's interest in the personal estate of Lawrence Greer, which he alleges to have amounted to $1,000, is not shown by the record. Lawrence Greer, Jr., as alledged by the complainant, was the administrator; although served with process, he does not answer, and we are authorized to presume that the claim as to the personalty, was privately arranged and settled.

At the time of the purchase from Brown, Elizabeth Greer was between seventy and eighty years of age. There were then eight slaves, increasing in number, and most of them improving in value, and if the allegations of the bill are true in regard to the personalty, and they are not controverted by any thing in the record, Brown's

interest in the personalty, would amount to $200, leaving only $50 as the consideration for the slaves.

Brown appears to have been illiterate, improvident and intemperate, and to have lived and died in indigent circumstances. It is true the complainant proves by one witness, that when he made the purchase, he, the witness, believed Brown was sober; but on the other hand, it is in proof, that he was generally intoxicated when he could obtain the means to get so; that he was utterly regardless of his family and children, who were infants, or the largest number of them, at his death.

In view of the whole case, is the complainant entitled to the assistance of a Court of Equity, to obtain the interest which he claims in these slaves? We think not.

It is questionable, whether from the terms of his purchase and his pleadings, aside from other considerations, he has shown himself entitled to relief. He purchased the interest of Brown in the estate of Lawrence Greer, supposed to include these slaves, and he so claims them in his pleadings. They never belonged to his estate, and the complainant acquired by his purchase, no interest in them upon that ground.

But giving the transfer the most favorable construction for the complainant, that he acquired the interest of Brown, whether the slaves belonged to the estate of Greer or otherwise, and waiving objections to his pleadings, yet we think a Court of Equity ought not to aid him in obtaining the measure of relief which he seeks.

The Chancellor will not lend his assistance to enforce an unconscientious bargain, made with one apparently ignorant of his rights, and where the consideration was greatly inadequate.

The entire misapprehension of the parties as to the title—the probable supposed doubt and uncertainty as to the ultimate interest of Brown—the great inadequacy of the consideration, even upon the supposition that nothing has been obtained from the personal estate of Greer— we say inadequacy of consideration, regarding the interest of Brown as absolute and certain as to one fifth of the slaves upon the death of Elizabeth Greer. The character, condition and habits of Brown—in view of these considerations, a Court of Equity, in our opinion, is not bound, and ought not to aid in the consummation of this unconscientious speculation—nor is the complainant entitled to any relief as the administrator of Elizabeth Brown,

which character he has acquired since the exhibition of his bill. . Upon her death, the slaves vested, as we have seen, absolutely in her husband; and his representatives, not hers, have the right to assert the claim.

But although a Court of Equity ought not to aid the complainant to the extent that he seeks relief, yet, as all the necessary parties are before the Court, if the complainant, upon the return of the cause, shall elect to take the amount of the purchase money paid Brown, and interest, we are of opinion the Court should to that extent give him relief; and if necessary for that purpose, that one or both the slaves allotted to the heirs of Elizabeth Brown should be subjected to sale. The balance of the hire, for which John Greer may be found liable, should be applied in discharge of the claim of the complainant, in the event of his election as indicated. But it seems to us that too large a sum is decreed against John Greer for hire. We think a Commissioner should be appointed, to hear additional testimony, and report upon that matter; and also, as to the amount, if any, received by the complainant out of the personal estate of L. Greer, on account of the interest of Brown, which should also be applied in reduction of the $250 paid Brown. But should the complainant decline to elect as suggested, in that case, his bill should be dismissed with costs, but without prejudice to any remedy he may have at law.

Wherefore, the decree is reversed, and the cause remanded for further proceedings, consistent with this opinion.

*Hardin* for appellants : *Morehead & Reed and Grigsby* for appellee.