## WOODLEY v. FINDLAY, et al.

1. A bequest of a slave to one for her life, and "at her death to the lawful issue of her body, that may then be living, to them and each of them, share and share alike, but should she die without lawful issue, then to go to her sisters, share and share alike," is good, as an executory devise, the sisters taking a vested remainder, as purchasers, which was not affeoted by the sale of the slave, by the husband of the tenant for life.

2. Where, from the organization of a court, no one of the Judges has precedence over the rest, from the necessity of the case, either of the Judges has power to make the certificate required by the act of Congress for the authentication of records. But in such a case, it must be shown that such is the organizotion of the court.

3. When the wife's *chose in action* accrues during the coverture, the husband may, or may not, join the wife in the suit, at his election.

Error to the Circuit Court of Cherokee.

DETINUE by the defendant in error, for a female slave named Dinah.

The plaintiffs claimed title under the will of Mary Davis, of Columbia county, Georgia. The probate is as follows:

*Georgia, Columbia county,* 6 *Nov'r,* 1815.

In the Court of Ordinary, John Foster, and Collier Foster, two of the subscribing witnesses to the within instrument of writing, being the last will and testament of Mary Davis, deceased, after being duly sworn on the Gospel of Almighty God, say, that they saw the subscriber in life, subscribe by her mark, and acknowledge the same, to be her last will and testament, and that Robert S. Foster, signed the same at the request of the testatrix, as a witness. Sworn to and subscribed in open court, this 6th Nov'r, 1815.

JOHN FOSTER,<br>COLLIER FOSTER.

H. CRAWFORD, Clerk.

To this is appended a certificate of Gabriel Jones, clerk of Columbia County Court, Ga., that the transcript is a correct copy of the will, and probate, as the same appears of record in his office, dated 10th March 1844.

Also, a certificate of William L. Blunt, who styles himself "one of the presiding Judges of the inferior court of said county and State, and by virtue thereof one of the presiding Justices of said court, when sitting for ordinary purposes," that Gabriel Jones *is* clerk of said court, &c., which is dated 30 March, 1844.

The clause of the will relied on is as follows: "I lend unto my grand-daughter, Mary Foster, one negro girl, called little Dinah, during her natural life, and at her death, I give and bequeath the said negro girl, little Dinah, and her increase, to the lawful issue of her body, that may then be living, to them and each of them, share and share alike, their heirs and assigns forever; but should the said Mary die without lawful issue, then to go to her sisters, share and share alike."

The plaintiff proved by Arthur Foster, that as husband of Mary Foster, and under the will of Mary Davis, he took pos-

session of the slave Dinah, and kept her in possession many years in Georgia, and in 1837 moved to Cherokee county, Alabama, bringing the slave with him. That by virtue of a trust deed, executed by him in Alabama, the slave was sold to pay a debt owed by him, and purchased by the defendant. That Mary Foster, his wife, died without issue, before the sale of the slave. That the wife of S. Findlay, one of the plaintiffs, Frances D. Cummings, and Henrietta Howard, the other two plaintiffs, were the only sisters Mary Foster had.

The defendant read from the statutes of Georgia, a law forbidding estates to be entailed.

The defendant moved the court to charge, that if they believe Arthur Foster took possession of the negro Dinah, under the will of Mary Davis, and at the time was husband of Mary, the legatee, and that she was sold for his debts, and purchased by the defendant, plaintiffs could not recover; which charge the court refused, and charged the jury, that the sisters of Mary Foster, had such a title in the slave, as would enable them to recover in this action, in virtue of the will of Mary Davis, and that if they believe the evidence, they must find for the plaintiffs. To which the defendant excepted, and now assigns as error.

S. F. RICE, for plaintiff in error. The wife of Findlay should have been joined in the suit with her husband. [1 Ch. P. 24.] The omission is ground of non suit, and may be taken advantage of on error. [1 M. & S. 176.]

The will created an estate tail in the property, and the whole vested in the first taker. [5 Ala. Rep. 578; 6 Id. 362.]

The remainder was destroyed by the execution of the deed of trust. [5 Ala. 578.]

The will is not legally authenticated, as the Judge does not certify that he is the presiding Justice, and there was no proof in the court below, that there was no presiding Justice. Nor does the Judge certify that Jones was clerk of the court when his certificate was made, which was dated seventeen days after the clerk's certificate.

The will does not appear to have been admitted to probate by any court in Georgia, but merely sworn to in open court.

Woodley v. Findlay, et al.

WHITE, contra.   The will is duly authenticated.  In Geor-
gia, the Court of Ordinary is composed of Justices of the
Peace, no one has precedence.   [Prince's Dig. 419, § 2;
910, § 6.]

The limitation over was not too remote, as it was to the
surviving sister.   [1 Stew. 536; 6 Porter, 327; 6 Ala. 363;
1 Bay. 78.]

When the wife's *chose in action* accrues during coverture,
the husband may sue alone, or join his wife, at his election.
[3 Litt. 281; Com. Dig. Baron and feme, 10; 3 Bac. Ab. 65;
Cro. Jas. 77, 205; 4 H. & M. 453.]

ORMOND, J.—In our opinion, the limitation over in this
case, to the sisters of Mary Foster, the tenant of the life es-
tate, is good by way of executory devise.   The bequest is
of a life estate in the slave, to Mary Foster, and at her death
it is to go to the *lawful issue of her body*, that may *then* be
living.   It is manifest that the first limitation was not too re-
mote, as it evidently contemplated, that the estate should vest
in her heirs at her death; it was not therefore upon an indefi-
nite failure of issue, as it must necessarily vest upon the death
of the first taker, if there is any one then in being, capable of
taking.   It is further urged, that the words of this devise
created an estate tail, which, by the statutes of Georgia, was
converted into an absolute estate in the first taker.   The
Georgia statute, as well as our own, was not intended to op-
erate on personal property, as that could not be entailed at
common law.   By the common law, if the language employ-
would create an estate tail, if the subject matter was land,
being of personal property, the absolute estate would be vest-
ed in the first taker.   The words necessary to create an es-
tate tail by the common law, in a deed, are *heir, or heirs of
the body*.   The language used here, is "issue of her body."
But it is settled by numerous adjudications, that the words
*issue* and *heirs of the body*, in a will, are controlled, and ex-
plained, by the intention, and may be either words of limi-
tation, or words of purchase, as may be necessary to effectuate
the intention of the testator.   See the numerous cases on
this head, marshalled by Hayes in his second table, in his
work on limitations.

Here the intention was perfectly obvious, that the issue of the body were to take as *purchasers*, and not as *heirs* of the first taken ; an estate tail could not therefore have been intended. See Jones v. Morgan, 1 Brown C. C. 218, where the rule is forcibly stated by Lord Thurlow, and Fearn on Rem. 194.

The limitation over to the sisters of the first taker, is also good, by the same process of reasoning—as it is evident the testatrix contemplated the remainder to vest in them, during their lives. The case of McGraw v. Davenport, 6 Porter, 319, is a case exactly in point. This, then, being a good remainder, as an executory devise, was a vested interest, and if the remaindermen had died, before the tenant of the life estate, would have passed to their representatives. The case of Price v. Price, 5 Ala. 578, was the case of a contingent remainder, created by deed. What is there said of the loss of the remainder, by the destruction of the particular estate, before the contingency happened, has no application here. This remainder is good as an executory devise, and as those in remainder take as purchasers, it is a vested interest. Being a vested interest, it was not in the power of the tenant for life, by any act of his, to affect it, and by the termination of the particular estate, their right became perfect.

The will appears to have been admitted to probate in Georgia, but the certificate of Mr. Blunt, who calls himself " one of the presiding Justices of the court," is, in our opinion, insufficient. The act of Congress requires the transcript to be authenticated by the certificate of the *presiding Judge or Justice.* If, from the organization of the court, no one of the Justices has precedence of the rest, from the necessity of the case, one of the Justices must have authority to make the certificate ; such is said to be the fact in this case, and we have been referred to the Georgia statute to prove that such is the organization of their Courts of Ordinary. If that proof had been made in the court below, the certificate would have been considered sufficient. This court cannot judicially know the statutes of other States. See Johnson v. How's Adm'r, 2 Stewart, 27.

The objection that the plaintiffs must fail in the action, because the wife of Findlay is not joined with him in the suit,

cannot prevail. When the wife's *chose in action* accrues during the coverture, the husband may, or may not, join the wife with him in the suit, at his election. [Morris v. Booth and wife, at the present term; Philliskirk v. Pluckwell, 2 M. & S. 393.]

For the error of the court, in admitting the transcript of the will and probate, without proof of the constitution of the Court of Ordinary, so as to authorize any one of the Judges thereof to certify the transcript, the judgment must be reversed and the cause remanded.