## McWILLIAMS et al. *vs.* RAMSAY, adm'r.

1. A husband conveyed by deed certain negroes to a trustee, in trust 'for the use, behoof and benefit of the grantor's wife *forever; provided,* however, that the title or property in said slaves should be and remain in the trustee for the use and behoof of the wife, her heirs, executors and assigns, *during her natural life only,* with remainder to the heirs of her body by the grantor who might be living at her death; and, in default of such issue living at that time, the title and property in said slaves to revert to the grantor if living, but if dead to descend to his heirs at law :' *Held,*

   I. That the deed, as against the husband, created *a separate estate* in the wife in the property conveyed;

   II. That the proviso was not repugnant to the preceding clause, but its effect was to limit the wife's interest to a *life estate;*

   III. That the *quasi* contingent remainder to the heirs of the body of the wife by the grantor who might be living at her death, was not too remote;

   IV. That a *quasi* reversionary interest remained in the grantor; and on his death, his wife surviving, this reversionary interest passed to his administrator, and was assets in his hands.

2. When a husband conveys personal property to a trustee for the use and benefit of his wife, she takes a separate estate in the property as against him.

3. The strictness of the ancient rule as to repugnancy in deeds is now much relaxed; the intention is to be gathered from the whole instrument, rather than from particular clauses seemingly repugnant.

4. A *quasi* reversionary interest in personal property may be created by deed, as upon a gift for life with contingent remainder.

5. When an administrator returns slaves in his inventory as belonging to the estate, and hires them out, taking notes payable to himself as administrator, he is not thereby estopped from amending his inventory, so as to leave them out if they do not belong to the estate.

ERROR to the Court of Probate of Autauga.

THE legal questions involved in this case arose upon an issue contesting the report of insolvency made by the defendant in error as administrator of Bartley L. Cox. On the trial, the said administrator introduced the following deed, after having proved its execution :

"THE STATE OF ALABAMA, }   This indenture, made and
        Autauga County.    }   entered into on this the first
day of February, 1849, between Bartley L. Cox of the first part, and James Ramsay of the second part, witnesseth : That

the said Bartley L. Cox, for and in consideration of the natural love and affection which he bears towards Penelope E., his wife, and the sum of one dollar to him in hand paid by said Ramsay, has given, granted, bargained, sold and conveyed, and by these presents doth give, grant, bargain, sell and convey the following negro slaves, to-wit: Anthony," &c., "and their increase, to have and hold said slaves to the said James Ramsay, for the use, benefit and behoof of the said Penelope E., wife of the said party of the first part, forever; *Provided*, however, that the title or property in said slaves shall be and remain in the said Ramsay, for the use and behoof of the said Penelope E., her heirs, executors and assigns as aforesaid, during her natural life only; at the termination of which natural life of the said Penelope E., the title or property in said negroes and their increase to descend to and vest in the issue or bodily heirs of the said Penelope E., should she have borne any such by the said party of the first part, should any of which said heirs be living at the termination of the natural life of the said Penelope E.; but should the said Penelope E have borne no bodily heir or heirs by the said party of the first part, which said heir or heirs shall be living and survive the said Penelope E., then, and in that event, the title and property in said slaves to revert and remain in said party of the first part, and should said party of the first part depart this life before, and leave the said Penelope E. living, then the title and property in said slaves and their increase shall descend to the heirs at law of him, the said party of the first part. And it is further expressly understood, by and between the parties to these presents, that said slaves and their increase shall be and remain in the possession of the said James Ramsay, for the use, benefit and behoof of the said Penelope E., her heirs and assigns forever, and that all and singular the benefits, proceeds, &c., arising from the labor, increase, &c. of said slaves, to go to the said Penelope E. during her natural life; should said life terminate before that of said party of the first part, then said slaves to descend and be divided among the bodily heir or heirs by the said party of the first part of the said Penelope E., if any, and should there be no such bodily heir or heirs, then to the heirs at law of the said party of the first part as aforesaid. And it is further understood by said parties, that should it at any time hereafter be

necessary to dispose of said negroes, or either of them, or their increase, by sale or otherwise, with the consent of the said Penelope E., the said party of the second part is hereby empowered to do the same, provided it can be done for the benefit or interest of the said Penelope E., and before the death of said party of the first part. In testimony whereof we have hereunto set our hands, and affixed our seals, the day and date aforesaid.

BARTLEY L. COX, [*Seal.*]

JAMES RAMSAY, [*Seal.*]"

This deed was recorded, but not in the mode required by the law. It was admitted that Bartley L. Cox was married to the said Penelope E. at the execution of the deed ; that they lived together as man and wife up to the time of his death, which was in February, 1851 ; that he died leaving no child or children by the said Penelope E., who survived him, and was then living ; that the slaves specified in the deed remained in his possession up to the time of his death ; that after the death of said Cox said Ramsay took out letters of administration on his estate, returned the slaves in his inventory as belonging to the estate, hired out the same, and took notes for their hire payable to himself as such administrator ; but that he subsequently applied for leave to amend his inventory so as to leave out said slaves, and leave was given that he might so amend. It was also admitted that he applied a portion of the hire of said slaves to the payment of the debts due by said Bartley L. Cox; that there had been no reconveyance of said slaves by Ramsay to Bartley L. Cox, and that if the slaves specified in the deed are not assets of the estate, the same is insolvent, but if assets, the same is solvent as to all debts which had been presented.

Upon this state of facts the court charged :

1. That said slaves were not assets of the estate of Bartley L. Cox ;

2. That upon the whole evidence the jury should find that the estate was insolvent.

There were other charges given, and also sundry charges requested by the plaintiffs in error, which it is unnecessary particularly to notice, as the legal questions presented are considered by the court upon the second charge above stated.

The charges given are here assigned for error.

WATTS, JUDGE & JACKSON, for plaintiffs in error.

N. HARRIS, *contra.*

GOLDTHWAITE, J.—The principal question in this case is, as to the construction of the deed executed by Bartley L. Cox on the 1st February, 1849; and we are clear that under it, Mrs. Cox took an equitable estate in the slaves conveyed, as her separate estate, the legal interest being in the trustee, Ramsay. The rule is settled in the English courts, that a gift of personal chattels by the husband to the wife will be supported in equity, to the exclusion of the husband, (Lucas v. Lucas, 1 Atk. 270;) as where the husband transfers stock held by him, into the name of of his wife, or of himself and wife.—(Rider v. Kidder, 10 Ves. 760; George v. The Bank of England, 10 Price 646; and see also Williams v. Maull, 20 Ala. 721, 730.) Upon what principle are gifts of this character supported, unless it be upon the presumption that, when a husband gives property to his wife, he intends it to be for her separate use?— Here, the slaves are given for the use, benefit and behoof of the wife, and the trustee is authorized to dispose of them with her consent. How can the slaves be given for the use and benefit of the wife, unless it is intended by the husband that the wife should have the benefit of them? If the donor was not the husband, the case would be different; but standing in that position, the language of the deed admits of but one construction. If the gift had been directly to the wife, as we have already seen, equity would sustain it against the husband, as divesting him of his marital rights, and here, as a trustee is interposed, we must hold that he takes the legal title, and that he holds as such for the separate use of the wife.

2. It is insisted by the defendant in error that, as the deed conveys the slaves to the use of the wife "forever," the subsequent clause which limits her interest to a life estate only, must be rejected as being repugnant to the preceding clause, and in this aspect she is entitled to the entire beneficial interest; but we do not think this position can be sustained. The strictness of the old rule in relation to repugnancy, has been essentially modified by the later decisions. The object of the rule itself could only have been to ascertain the intention of the parties, and the flagrant injustice which must too frequently result from

its rigid observance, has led judges to seek that intention from the whole deed, rather than from particular parts.   The rule, it is true, must still apply, where two clauses of a deed are utterly repugnant, and it is impossible from the other portions of the instrument to discover, with any thing like certainty, the intention of the parties; but where that is clear from the whole deed, the doctrine of repugnancy has no application.—4 Green. Cruise, Title 32, ch. 12, § 26, n. 1.   In relation to the deed under consideration, there can be no doubt as to the intent of the donor to confer but a life interest upon the wife.   The words are " to hold said slaves &c. for the use" &c.   "of the said Penelope E. forever ; Provided, however, that the title or property in said slaves shall be and remain in the said Ramsay, for the use &c. of the said Penelope E. during her natural life only."   The natural and legitimate office of a proviso is, to restrain or qualify some matter which precedes it; and the words of limitation upon the interest of the wife, as they are found in the proviso, sufficiently indicate the intention of the donor to confine the gift to the wife to the term of her natural life.   But, in addition to the language of the proviso, we have the limitations over upon the termination of the life interest : the donor not only, in express terms, limits the beneficial interest of the wife to her life, but he also makes a disposition of the property after the termination of that interest.   We must, if possible, so construe the deed as to give effect to these limitations, and we cannot sustain them, unless we support the proviso.   We all agree that under the deed the wife took but a life interest.

The only remaining question upon the deed, which it is necessary to determine, is, whether Bartley L. Cox, the donor, retained any interest in the slaves.   That a remainder may be limited after a life estate in personal chattels by deed is well settled by the American decisions, (Horne v. Gartman, 1 Branch 63 ; Duke v. Dyches, 2 Strobh. Eq. 353 ; Roberson v. Schley, 6 Geo. 515 ; Greer v. Boone, 5 B. Mon. 554 ;) and that a contingent remainder may be so limited by deed, has been decided by this court in Price v. Price, 5 Ala. 578, and Williamson v. Mason, at the present term.   The necessary consequence of this doctrine, in its application to personal property of this description, is, that if a partial disposition is made, as a gift for life, with a limitation over upon an uncertain event, the donor, upon

100

the determination of the particular estate, is entitled to the property, if the contingency has become impossible. In other words, a *quasi* reversionary interest in personal property results from the rule, which allows the interest which the owner has in that species of property to be divided into distinct parts, and limited *in futuro*.

In the present case, the legal title in the slaves is transferred to Ramsay, to hold for the life of Mrs. Cox, remainder over to the heirs of her body by the grantor living at her death; and the deed also, by a subsequent clause, declares, in effect, that in case of the death of Mrs. Cox, leaving no such heirs surviving her, " the title and property in said slaves" shall revert to the grantor if living, and if dead " shall descend to his heirs."— The limitation over to the heirs of Mrs. Cox is not too remote, as it is restricted to the particular heirs who may be living at the time of her death, (Kealing v. Reynolds, 1 Pay 80 ; Fosdick v. Cornell, 1 Johns. 440 ;) and as the event upon which the slaves are limited is uncertain in its nature, it is simply a contingent disposition of personal property.

The subsequent clause of the deed, which declares, in effect, that in case of the death of Mrs. Cox, leaving no heirs of her body by the grantor surviving her, " the title and property in said slaves" shall revert to the grantor if living, and if dead "shall descend to his heirs," was, as we think, inserted with the view of accomplishing that which the law, under the rules we have laid down, would have done had it been omitted. The object of the donor was simply to secure to himself the slaves and their increase, at the termination of the life interest, if the contingency upon which he was to be divested of his entire interest in the property had not then occurred, or, in case he was not then living, that the slaves should pass as other property of the like nature would have passed by his death. We base our construction on the use of the word "descend," which, although in strictness it has no application to personal property, may be regarded as expressive of the intention of the donor, that those who were entitled to the property were to take by the act of the law, rather than by the act of the party—by limitation, rather than by purchase. It is, in fact, precisely the same, as if the deed had provided that, upon the failure of the contingency, the property should revert to the grantor and his heirs.

It results from the view we have taken, that the reversionary right of property expectant upon the determination of the life interest in the slaves, passed to the administrator of the grantor; that this right was assets in his hands, and should have been returned in his inventory; and that the second charge given by the court was erroneous.

As the case must be remanded, it may be proper to add, that returning the slaves in the inventory and taking notes for their hire payable to the administrator as such, did not estop him from amending the inventory in conformity with the real facts.

The judgment is reversed, and the cause remanded.